**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Administrative Agent and Collateral Agent, <br><br> Plaintiff, <br><br> v. <br><br> THE ESTATE OF AUBREY K. McCLENDON, DECEASED, THOMAS J. BLALOCK, in his capacity as Personal Representative of the Estate of Aubrey K. McClendon, deceased, and KATHLEEN B. McCLENDON, in her capacity as Special Administrator of the Estate of Aubrey K. McClendon, deceased, <br><br> Defendants. | 17 Civ. 6688 |

## COMPLAINT

Plaintiff Wilmington Trust, National Association, as Administrative Agent and Collateral Agent ("Wilmington Trust" or the "Agent") under the Credit Agreement and the Guaranty (as such terms are defined below), for its Complaint against Defendants the Estate of Aubrey K. McClendon, Thomas J. Blalock, in his capacity as Personal Representative of the Estate of Aubrey K. McClendon, and Kathleen B. McClendon, in her capacity as Special Administrator of the Estate of Aubrey K. McClendon, hereby alleges as follows:

## NATURE OF THIS ACTION

1.     This action arises from certain agreements that were executed and delivered in connection with the extension of a $465 million term loan to American Energy Partners Holdco, LLC (the "Borrower") pursuant to that certain Credit and Guaranty Agreement, dated as of

November 6, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement"), among the Borrower, American Energy Partners, LP ("AELP"), certain subsidiaries of the Borrower, Wilmington Trust, the lenders from time to time party thereto (the "Lenders"), and the other parties thereto.

2.     At the heart of this action is a personal guaranty for payment that Aubrey K. McClendon—who controlled the Borrower—executed and delivered to Wilmington Trust on or about November 6, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "Guaranty"). Under the Guaranty, Mr. McClendon absolutely and unconditionally, and jointly and severally with all other guarantors, guaranteed the payment of all of the Borrower's obligations under the Credit Agreement.

3.     Mr. McClendon's death on March 2, 2016 constituted an event of default under the Credit Agreement.   On April 18, 2016, in accordance with the Credit Agreement, Wilmington Trust declared the obligations to be immediately due and payable, and demanded that the Borrower and the guarantors, including the Estate of Mr. McClendon (the "Estate"), immediately pay all of the obligations due and owing under the Credit Agreement in full in cash.

4.     Notwithstanding the absolute and unconditional nature of the Guaranty, which is expressly binding upon the Estate, the Estate has failed to pay the amounts due under the Credit Agreement and Guaranty.  Wilmington Trust now brings this action to obtain a judgment on the Guaranty against the Estate for all amounts due and owing under the Guaranty.

5.     In addition to failing to repay the amounts due, the Estate has failed to abide by certain negative covenants set forth in the Guaranty, for which Wilmington Trust also seeks declaratory relief.   The Estate has also failed to provide Wilmington Trust with financial information regarding Mr. McClendon and the Estate to which Wilmington Trust is entitled

under the Guaranty. Wilmington Trust therefore also seeks declaratory relief regarding the Estate's financial disclosure obligations, compliance with negative covenants in the Guaranty, and an order compelling specific performance of such obligations.

## THE PARTIES

6. Plaintiff Wilmington Trust is a national banking association with its main office at 1100 North Market Street in Wilmington, Delaware.

7. Wilmington Trust is the Administrative Agent and Collateral Agent for the Lenders under the Credit Agreement.

8. "Credit Documents" within the meaning of the Credit Agreement include, *inter alia*, the Credit Agreement and the Guaranty. A "Credit Party" within the meaning of the Credit Agreement "means each Person (other than any Agent or any Lender or any other representative thereof) from time to time party to a Credit Document." "Obligations" within the meaning of the Credit Agreement refer to all obligations of every nature of each Credit Party, including obligations owed to Wilmington Trust or the Lenders under any Credit Document. Credit Agreement § 1.1.

9. Pursuant to Section 9.2 of the Credit Agreement, each Lender authorized Wilmington Trust "to take such action on such Lender's behalf and to exercise such powers, rights and remedies hereunder and under the other Credit Documents as are specifically delegated or granted to [Wilmington Trust] by the terms hereof and thereof, together with such powers, rights and remedies as are reasonably incidental thereto."

10. Both the Guaranty and the Credit Agreement empower Wilmington Trust to enforce all powers, rights, and remedies under Guaranty upon the occurrence of an Event of Default under the Credit Agreement. Guaranty § 3(a); Credit Agreement § 9.8.

11.     Upon information and belief, at the time of his death Aubrey K. McClendon ("Mr. McClendon" or "the Guarantor") was a citizen and resident of Oklahoma.  Defendant the Estate of Aubrey K. McClendon is being probated in the District Court of Oklahoma County in the State of Oklahoma.

12.     Defendant Thomas J. Blalock (the "Personal Representative") is the Personal Representative of the Estate.  Upon information and belief, Mr. Blalock resides in Edmond, Oklahoma.  Upon information and belief, the Personal Representative is deemed to be a citizen of Oklahoma for purposes of 28 U.S.C. § 1332.

13.     Defendant Kathleen B. McClendon (the "Special Administrator") is the Special Administrator of the Estate with respect to the action titled *Mueller v. SCOOP Energy Company Holdings, LLC*, Case No. CJ-2016-5774 (Okla. Cty. Dist. Ct.), which is pending in the District Court of Oklahoma County in the State of Oklahoma.   Upon information and belief, Mrs. McClendon resides in Nichols Hills, Oklahoma.  Upon information and belief, the Special Administrator is deemed to be a citizen of Oklahoma for purposes of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Wilmington Trust and Defendants and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15.     This action is properly before this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

16.     Section 14 of the Guaranty contains the following forum-selection clause, which provides for the exclusive jurisdiction of the state and federal courts located in the City and County of New York over any actions arising out of or related to the Guaranty:

CONSENT TO JURISDICTION. SUBJECT TO CLAUSE (E) OF THE FOLLOWING SENTENCE, ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY PARTY ARISING OUT OF OR RELATING HERETO OR ANY OTHER CREDIT DOCUMENTS, OR ANY OF THE OBLIGATIONS, SHALL BE BROUGHT IN ANY FEDERAL COURT OF THE UNITED STATES OF AMERICA SITTING IN THE BOROUGH OF MANHATTAN OR, IF THAT COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION, IN ANY STATE COURT LOCATED IN THE CITY AND COUNTY OF NEW YORK. BY EXECUTING AND DELIVERING THIS GUARANTY, GUARANTOR, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY (A) ACCEPTS GENERALLY AND UNCONDITIONALLY THE EXCLUSIVE (SUBJECT TO CLAUSE (E) BELOW) JURISDICTION AND VENUE OF SUCH COURTS; (B) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (C) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE GUARANTOR AT ITS ADDRESS PROVIDED IN ACCORDANCE WITH SECTION 15; (D) AGREES THAT SERVICE AS PROVIDED IN CLAUSE (C) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE GUARANTOR IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT; AND (E) AGREES THAT AGENTS AND LENDERS RETAIN THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO BRING PROCEEDINGS AGAINST GUARANTOR IN THE COURTS OF ANY OTHER JURISDICTION IN CONNECTION WITH THE ENFORCEMENT OF ANY JUDGMENT, AND HEREBY SUBMITS TO THE JURISDICTION OF, AND CONSENTS TO VENUE IN, ANY SUCH COURT.

17.     Section 8 of the Guaranty provides that the "Guaranty shall be binding upon Guarantor, Guarantor's successors and assigns and Guarantor's estate and legal representatives in the event of the death or incapacity of Guarantor, whether or not an executor, administrator, guardian, committee, trustee, or other representative has been appointed to Guarantor's estate, and shall inure to the benefit of the Agent's successors and assigns, and to the individual managing directors and assigns of the Agent."

18.     This Court has personal jurisdiction over the Estate, the Personal Representative, and the Special Administrator by virtue of the fact that Mr. McClendon irrevocably, generally, and unconditionally consented to the jurisdiction of this Court pursuant to the Guaranty.

19.     Venue is proper in this District by virtue of the fact that Mr. McClendon irrevocably, generally, and unconditionally consented to venue in this District pursuant to the Guaranty.

### FACTUAL BACKGROUND

**The Credit Documents**

20.     On or about November 6, 2014, the Borrower, AELP, certain subsidiaries of the Borrower, the Agent, and the Lenders executed the Credit Agreement.  A copy of the Credit Agreement and its amendments (exclusive of appendices, schedules, and exhibits that are not relevant) is attached hereto as Exhibit A.  For the Court's convenience, a conformed copy of the Credit Agreement, reflecting all amendments to date, is attached hereto as Exhibit B.

21.     Pursuant to the Credit Agreement, the Lenders extended a term loan to the Borrower in the principal amount of $465 million.

22.     The Credit Agreement provides that the rights and obligations of the parties to the Credit Agreement and the other Credit Documents shall be governed by, and construed and enforced in accordance with, the laws of the state of New York.

23.     On or about November 6, 2014, Mr. McClendon, as Guarantor, executed the Guaranty in favor of the Agent.  A copy of the Guaranty and its amendments (exclusive of schedules and exhibits that are not relevant) is attached hereto as Exhibit C.  For the Court's convenience, a conformed copy of the Guaranty, reflecting all amendments to date, is attached hereto as Exhibit D.

24.     The execution of the Guaranty was a condition precedent to the obligations of the Lenders to make the term loan to the Borrower pursuant to the Credit Agreement and was expressly entered into to induce the Lenders to make the term loan under the Credit Agreement.

25.     Pursuant to Section 2 of the Guaranty, Mr. McClendon jointly and severally guaranteed "the prompt and complete payment and performance when due, whether by demand, acceleration or otherwise," of all Obligations.

26.     Section 3(a) of the Guaranty provides that the "Guarantor's obligations under this Guaranty shall be absolute and unconditional."

27.     By its terms, the Guaranty "is a guaranty of payment and not merely of collection."  Guaranty § 3(a).

28.     Pursuant to Section 3(a) of the Guaranty, Mr. McClendon "waive[d] any right of setoff or counterclaim which Guarantor may have or acquire against any of [Wilmington Trust or the Lenders]."  Section 3(b) of the Guaranty further provides that Mr. McClendon "shall make all payments hereunder without setoff or counterclaim and free and clear of and without deduction . . . ."

29.     Pursuant to Section 3(c) of the Guaranty, Mr. McClendon consented and agreed that Wilmington Trust or the Lenders may "take, hold, exchange, enforce, waive, release, fail to perfect, sell, or otherwise dispose of any security for the payment of this Guaranty or any Obligations" and "apply such security and direct the order or manner of sale thereof as the Agent in its sole discretion may determine."

30.     Pursuant to Section 6 of the Guaranty, Mr. McClendon also waived, *inter alia*, "any fact or circumstance related to the Obligations which might otherwise constitute a defense to the obligations of the Guarantor under this Guaranty," "any right to require the Agent to proceed against any other Credit Party, proceed against or exhaust any security for the Obligations, or pursue any other remedy in the Agent's power whatsoever and any defense based

upon the doctrine of marshalling of assets or of election of remedies," and "all presentments, demands for payment or performance [and] notices of nonpayment or nonperformance."

31.     Pursuant to Section 3(a) of the Guaranty, Mr. McClendon consented and agreed that Wilmington Trust and the Lenders "have no duty or responsibility whatsoever to Guarantor in respect of the management and maintenance of the Obligations or any [c]ollateral therefor."

32.     Pursuant to Section 12 of the Guaranty, the "Guarantor agree[d], jointly and severally . . . , to pay on demand all out-of-pocket expenses (including the reasonable fees and expenses of counsel) in any way relating to the enforcement or protection of [Wilmington Trust's or the Lenders'] rights or in connection with a breach by the Borrower of the Obligations."

33.     Section 13 of the Guaranty provides that "[t]his Guaranty and the rights and obligations of the parties hereunder (including, without limitation, any claims sounding in contract law or tort law arising out of the subject matter hereof and any determinations with respect to post-judgment interest) shall be governed by, and shall be construed and enforced in accordance with, the laws of the state of New York."

34.     Mr. McClendon's death on March 2, 2016 constituted an Event of Default under Section 8.1 of the Credit Agreement.

35.     Upon the occurrence of the Event of Default, Wilmington Trust was entitled to enforce the terms of the Guaranty.  Guaranty § 3(a).

36.     Pursuant to Section 3(a) of the Guaranty, "[t]he obligations of the Guarantor hereunder are independent of the obligations of Borrower and the obligations of any other Credit Party."

37.     Pursuant to Section 3(a) of the Guaranty, "a separate action or actions may be brought and prosecuted against the Guarantor whether or not any action is brought against

Borrower or any of such other Credit Parties and whether or not any other Credit Party is joined in any such action or actions."

38.     On April 18, 2016, Wilmington Trust notified the Borrower and the Estate by written notice of acceleration that all Obligations were immediately due and payable and demanded immediate payment in full of all such amounts in cash.

39.     Neither the Borrower nor the Estate responded to Wilmington Trust's written notice of acceleration.

40.     As of the filing of this Complaint, no payments under the Guaranty have been made by the Estate.

### The Probate Proceeding

41.     After Mr. McClendon's death, the Estate entered probate in Oklahoma in the proceeding titled *In the Matter of the Estate of Aubrey K. McClendon, Deceased*, Case No. PB-2016-342 (Okla. Cty. Dist. Ct.) (the "Probate Proceeding").

42.     Thomas J. Blalock was appointed in the Probate Proceeding as the Personal Representative of the Estate.

43.     On or about May 27, 2016, as required by Oklahoma probate procedure, Wilmington Trust presented to the Personal Representative in the Probate Proceeding a creditor claim against the Estate under the Guaranty in the amount of $464,369,418.22, plus interest accrued and accruing costs, expenses, and attorney's fees.

44.     On or about August 15, 2016, the Personal Representative partially rejected Wilmington Trust's creditor claim under the Guaranty in a document titled "Action of the Personal Representative with Respect to Creditor Claim of Wilmington Trust, N.A.," which was filed in the Probate Proceeding.

45.     In taking this action, the Personal Representative accepted the principal amount of Wilmington Trust's claim, "less the value of certain collateral that was pledged to Wilmington [Trust] in connection with the Credit Agreement and that Wilmington [Trust] presently controls."  Action of the Personal Representative with Respect to Creditor Claim of Wilmington Trust, N.A. at 1.

46.     Okla. Stat. tit. 58, § 339 provides that when a claim is rejected, the holder of the claim may bring suit against the representative of the estate "as an ancillary proceeding in the probate case or as an independent action," and that "[a]ny proceeding or action shall be filed within forty-five (45) days after the date the claim was rejected, if it be then due . . . ; otherwise the claim is forever barred."  Under Oklahoma probate law, such proceedings or actions must be brought in Oklahoma state court.

47.     As required by Okla. Stat. tit. 58, § 339, on September 28, 2016, Wilmington Trust commenced in Oklahoma state court an independent action for wrongful denial of its creditor claim under the Oklahoma probate code by filing a "Petition for Allowance of Claim in Full of Creditor Wilmington Trust, National Association."  In its Petition, Wilmington Trust challenges the Personal Representative's partial rejection of its creditor claim under the Oklahoma probate code and seeks to establish its claim under the Oklahoma probate code in its full amount against the Estate.  This action is titled *Wilmington Trust, National Association v. Blalock*, Case No. CJ-2016-4974 (Okla. Cty. Dist. Ct.), and is pending in the District Court of Oklahoma County in the State of Oklahoma.

48.     In bringing the action for wrongful denial of its creditor claim in Oklahoma state court pursuant to Oklahoma probate procedure, Wilmington Trust "expressly reserve[d] all rights under the Guaranty and Credit Agreement, and [did] not waive or forfeit any rights under the

Guaranty or Credit Agreement, including without limitation the right to enforce the forum selection provisions therein." Petition for Allowance of Claim in Full of Creditor Wilmington Trust, National Association ¶ 14.

49.     On September 29, 2016, Wilmington Trust entered into a tolling agreement with the Personal Representative, under which Wilmington Trust agreed to file an action regarding its creditor claim based on the Guaranty "initially only in Oklahoma on or before September 29, 2016," but reserved all rights to later file and pursue the underlying claims under the Guaranty in New York.

### Kathleen McClendon's Appointment as Special Administrator

50.     On or about November 10, 2016, Scott R. Mueller commenced an action in Oklahoma state court titled *Mueller v. SCOOP Energy Company Holdings, LLC*, Case No. CJ-2016-5774 (Okla. Cty. Dist. Ct.) (the "SCOOP Litigation").

51.     In the SCOOP Litigation, Mr. Mueller named as defendants SCOOP Energy Company Holdings, LLC ("SCOOP Holdings"); SCOOP Energy Company, LLC ("SEC"); Thomas J. Blalock, in his capacity as Personal Representative; Thomas J. Blalock, individually; and Ryan A. Turner.

52.     The petition in the SCOOP Litigation alleges that a document entitled the "Equity and Co-Investment Agreement" (the "ECOIA"), effective as of September 30, 2015, awarded Mr. Mueller, Mr. Turner, and Mr. Blalock certain ownership or membership interests in "New AELP Businesses," including SCOOP Holdings and SEC, that were held by Mr. McClendon. Mueller Petition ¶¶ 14, 15, 16, 54.

53.     Because Mr. Blalock, in his individual capacity, is one of the parties to the ECOIA and also claims (in the Probate Proceeding) an entitlement to a percentage of the Estate's

profits in certain companies, including SCOOP Holdings and SEC, on or about April 5, 2017, the Oklahoma probate court appointed Mrs. McClendon as Special Administrator of the Estate and authorized and empowered Mrs. McClendon to, *inter alia*, "[a]ppear on behalf of and represent the Estate in the SCOOP Litigation and any related appeal, mediation or arbitration."  Order Appointing Special Administrator at 2.

54.    On or about April 17, 2017, the Oklahoma district court entered an order substituting Mrs. McClendon for Mr. Blalock as the representative of the Estate with respect to the SCOOP Litigation.

55.    Because Mrs. McClendon is now the duly appointed representative of the Estate with respect to certain matters, Wilmington Trust has joined the Special Administrator as a defendant herein.

### The Negative Covenants

56.    Section 5 of the Guaranty contains a series of negative covenants (the "Negative Covenants") that obligated Mr. McClendon (and the Estate) to refrain from performing certain actions so long as Mr. McClendon (or the Estate) had any obligations under the Guaranty.

57.    Pursuant to Section 5(g) of the Guaranty, Mr. McClendon agreed that he would "not sell, transfer, assign or otherwise dispose of, or dividend or otherwise distribute, whether directly or indirectly, any of the [e]quity [i]nterests in a Credit Party, [or] any subsidiary."

58.    Pursuant to Section 5(m) of the Guaranty, Mr. McClendon further agreed that he would not "amend or otherwise modify, or cause any other [p]erson to amend or otherwise modify, any [o]rganizational [d]ocuments of any Credit Party or any subsidiary thereof . . . , in a manner adverse to the rights and interests of [Wilmington Trust] or the Lenders under the Credit Documents."

59.     By letters dated June 26, 2017 and July 21, 2017, Wilmington Trust informed the Special Administrator that any distribution by the Estate of equity interests in SCOOP Holdings or SEC to Mr. Mueller, Mr. Turner, or Mr. Blalock, or any amendment by the Estate of SEC Holdings' or SEC's organizational documents, would violate the Guaranty.  As of the filing of this Complaint, the Special Administrator has provided no assurance that the Estate will refrain from taking steps to effect any distribution of such equity interests or refrain from amending the organizational documents.

### The Financial Information Covenants

60.     Under Section 5(l) of the Guaranty (the "Financial Information Covenants"), Mr. McClendon covenanted that (x) within 75 days following the end of each calendar quarter, he would provide Wilmington Trust with signed unaudited financial statements of Mr. McClendon, (y) within 15 days following the filing thereof, he would provide Wilmington Trust with copies of the most recently filed federal and state tax returns of Mr. McClendon, and (z) promptly upon the reasonable request of Wilmington Trust (but no later than 30 days after receiving such request), he would provide Wilmington Trust with such other financial information regarding Mr. McClendon as so requested.

61.     By letters to the Personal Representative dated May 5, 2017, May 26, 2017, June 6, 2017, June 16, 2017, and June 30, 2017, counsel for Wilmington Trust requested from the Estate certain financial information and documents to which it is entitled under the Financial Information Covenants.

62.     Pursuant to the Financial Information Covenants, Wilmington Trust requested, among other matters, copies of all tax returns that have been filed by or on behalf of the Estate, along with all associated schedules, forms, attachments, and other supporting documentation;

information and documents pertaining to life insurance policies held by Mr. McClendon or on

Mr. McClendon's life; and an analysis of all liabilities of Mr. McClendon and the Estate.

63.     By letters dated June 5, 2017, June 16, 2017, June 26, 2017, and July 17, 2017,

the Personal Representative objected to providing certain information and documents that

Wilmington Trust requested unless and until Wilmington Trust consented to one or more

confidentiality agreements pertaining to the disclosure of such materials.

64.     The Credit Documents do not require Wilmington Trust to enter into a

confidentiality agreement to obtain the information to which it is entitled under the Financial

Information Covenants.  In fact, the Credit Agreement contains its own confidentiality provision,

Section 10.17, which applies to specified materials furnished to Wilmington Trust pursuant to

the requirements of the Credit Agreement.

65.     In the June 16, 2017 letter to the Personal Representative, counsel for Wilmington

Trust reiterated that the Guaranty does not require Wilmington Trust to enter into a

confidentiality agreement to obtain the information to which it is entitled under the Financial

Information Covenants.  Nevertheless, while reserving all rights under the Guaranty, counsel for

Wilmington Trust stated that to avoid future delays in providing the information to which

Wilmington Trust is entitled, Wilmington Trust would be willing to enter into an "omnibus"

confidentiality agreement that would cover any future information that the Estate provides to

Wilmington Trust pursuant to its obligations under the Guaranty.

66.     In the June 26, 2017 letter to Wilmington Trust, the Personal Representative

enclosed revisions to a draft omnibus confidentiality agreement that would cover financial

information that the Personal Representative provided to Wilmington Trust pursuant to the

Guaranty.  The Personal Representative's proposed revisions expressly disputed Wilmington

Trust's position that the Guaranty obligates the Estate to provide financial information regarding Mr. McClendon and the Estate upon reasonable request, as well as certain information independent of any request. The Personal Representative's proposed revisions further assert that the execution of an omnibus confidentiality agreement does not guarantee the production of any documents or information and that any future requests for documents or information from Wilmington Trust will be considered on a "case-by-case basis."

67.    The Personal Representative has engaged in a pattern of delay and obstruction, refusing to produce financial information as required under the Guaranty and imposing conditions that have no support in the Guaranty.

68.    As of the filing of this Complaint, the Estate has not delivered to Wilmington Trust the information that Wilmington Trust requested pursuant to the Financial Information Covenants or the information to which Wilmington Trust is entitled under the Financial Information Covenants.

69.    The Estate's failure to provide Wilmington Trust the financial information to which it is entitled under the Financial Information Covenants has impeded Wilmington Trust's and the Lenders' ability to determine the Estate's assets and liabilities to recover on their claims against the Estate.

**FIRST CAUSE OF ACTION**
**JUDGMENT ON THE GUARANTY**
**(against all Defendants)**

70.    Wilmington Trust repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though set forth in full herein.

71.    The Borrower, Wilmington Trust, and the Lenders entered into a valid, binding, and enforceable written Credit Agreement.

72.     Mr. McClendon and Wilmington Trust entered into a valid, binding, and enforceable written Guaranty.

73.     The execution of the Guaranty was a condition precedent to the obligations of the Lenders to make the term loan to the Borrower pursuant to the Credit Agreement.

74.     By executing the Guaranty, Mr. McClendon absolutely and unconditionally, and jointly and severally, guaranteed full payment, when due, of all amounts outstanding under the Credit Agreement.

75.     Pursuant to Section 3(a) of the Guaranty, the obligations of the Guarantor are absolute, unconditional, and independent of the obligations of the Borrower and the obligations of any other Credit Party.

76.     Pursuant to Section 3(a) of the Guaranty, the Guaranty is a guaranty of payment and not merely of collection.

77.     The Guaranty imposes no obligation on Wilmington Trust or the Lenders to seek satisfaction of amounts due and owing under the Credit Agreement from any other source (including non-Estate assets) before seeking payment of such amounts from the Estate.

78.     Mr. McClendon's death constituted an Event of Default within the meaning of the Guaranty and the Credit Agreement.

79.     Payment of all Obligations under the Credit Agreement was immediately due and payable when the Credit Parties were notified that the Obligations were accelerated pursuant to the terms of the Credit Agreement.

80.     Neither the Borrower nor any other third party has paid the Obligations due and owing under the Credit Agreement.

81.     The Guaranty is binding on the Estate, the Personal Representative, and the Special Administrator.

82.     Pursuant to the payment Guaranty, the Estate is liable for all Obligations due and owing under the Credit Agreement.

83.     The Estate continues to have obligations under the Guaranty to repay the Obligations due and owing under the Credit Agreement.

84.     Notwithstanding written demand for payment, the Estate has failed to make any payment with respect to the Obligations due and owing under the Credit Agreement.

85.     Wilmington Trust requests entry of a judgment in the amount of all Obligations due and owing under the Credit Agreement and the Guaranty, including interest accrued and accruing, costs, expenses, attorney's fees, indemnification obligations, and all other Obligations.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT WITH RESPECT TO THE NEGATIVE COVENANTS**
**(against all Defendants)**

86.     Wilmington Trust repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though set forth in full herein.

87.     The Negative Covenants contained in Section 5 of the Guaranty obligated Mr. McClendon (and the Estate) to refrain from performing certain actions so long as Mr. McClendon (or the Estate) had any obligations under the Guaranty.

88.     Pursuant to Sections 5(g)(ii) and 5(m)(i) of the Guaranty, Mr. McClendon covenanted that he would not (x) sell, transfer, assign, or otherwise dispose of any equity interests in any Credit Party or any subsidiary held, directly or indirectly, by Mr. McClendon or (y) amend or otherwise modify, or cause any other Person to amend or otherwise modify, any

organizational documents of any Credit Party or any subsidiary thereof in a manner adverse to the rights and interests of Wilmington Trust or the Lenders under the Credit Documents.

89.     Section 1 of the Guaranty provides that "[c]apitalized terms used herein but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Credit Agreement."

90.     The Credit Agreement defines "Equity Interests" to mean "any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation), including partnership interests, membership interests and incentive interests, and any and all warrants, rights or options to purchase or other arrangements or rights to acquire any of the foregoing."

91.     The Credit Agreement defines "Person" to mean "natural persons, corporations, limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, Joint Ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other organizations, whether or not legal entities, and Governmental Authorities."

92.     The Credit Agreement defines "subsidiary" in relevant part to mean "with respect to any Person, any corporation, partnership, limited liability company, association, joint venture or other business entity of which more than 50% of the total voting power of shares of stock or other ownership interests entitled (without regard to the occurrence of any contingency) to vote in the election of the Person or Persons (whether directors, managers, trustees or other Persons performing similar functions) having the power to direct or cause the direction of the

management and policies thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other subsidiaries of that Person or a combination thereof."

93.    Under the foregoing definitions, Mr. McClendon was both a "Person" and a "Credit Party" within the meaning of the Guaranty, as he was a natural person and a party to the Guaranty.

94.    In accordance with the foregoing provisions and definitions, Mr. McClendon covenanted that he would "not sell, transfer, assign . . . or otherwise distribute, whether directly or indirectly, any of the Equity Interests" in any business entities owned or controlled by Mr. McClendon.

95.    In accordance with the foregoing provisions and definitions, Mr. McClendon covenanted that he would not "amend or otherwise modify, or cause any other Person to amend or otherwise modify, any [o]rganizational [d]ocuments of [any business entities owned or controlled by Mr. McClendon] . . . , in a manner adverse to the rights and interests of [Wilmington Trust] or the Lenders under the Credit Documents."

96.    Upon information and belief, Mr. McClendon owned or controlled, *inter alia*, SCOOP Holdings and SEC.

97.    Any amendment or modification of the organizational documents of SCOOP Holdings or SEC that permits or causes the distribution of any ownership interests from the Estate to any third parties would be adverse to the rights and interests of Wilmington Trust and the Lenders.

98.    An actual and substantial controversy exists between parties having adverse legal interests as to the Estate's obligations under the Guaranty, which controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

99.     Wilmington Trust is entitled to (1) a judicial determination and declaration that the Negative Covenants are binding on the Estate, the Personal Representative, and the Special Administrator, (2) a judicial determination and declaration that any distribution from the Estate to any third parties of any equity interests in any business entities owned or controlled by Mr. McClendon, including but not limited to SCOOP Holdings or SEC, is barred by the terms of the Guaranty, and (3) a judicial determination and declaration that any amendment or modification by the Estate, or by another person permitted or caused by the Estate, of any organizational documents of any business entities owned or controlled by Mr. McClendon, including but not limited to SCOOP Holdings or SEC, in a manner adverse to the rights and interests of Wilmington Trust or the Lenders, is barred by the terms of the Guaranty.

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT WITH RESPECT TO THE FINANCIAL INFORMATION COVENANTS
### (against all Defendants)

100.    Wilmington Trust repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though set forth in full herein.

101.    Section 5 of the Guaranty contains covenants, including the Financial Information Covenants, that obligate Mr. McClendon (and the Estate) to perform certain actions so long as Mr. McClendon (or the Estate) shall have any obligations under the Guaranty.

102.    As of the filing of this Complaint, the Estate has not delivered to Wilmington Trust any of the following financial information that Wilmington Trust requested pursuant to the Financial Information Covenants in its May 5, 2017, May 26, 2017, June 6, 2017, June 16, 2017, and June 30, 2017 letters to the Personal Representative or that the Estate is obligated to deliver to Wilmington Trust pursuant to the Financial Information Covenants independent of any request, including:

a. All unaudited financial statements of the Estate, including, without limitation, the financial statements corresponding to the calendar quarter ending December 31, 2016, which statements were due to be delivered to Wilmington within 75 days following December 31, 2016;

b. Copies of all tax returns, along with all associated schedules, forms, attachments, and other supporting documentation, that have been filed by or on behalf of the Estate, and within 15 days of filing, copies of any federal or state tax returns that will be filed on behalf of Mr. McClendon or the Estate for previous, current, or subsequent tax years;

c. A detailed analysis of all indebtedness and other liabilities of Mr. McClendon and the Estate, including, without limitation, all claims that have been asserted against Mr. McClendon or the Estate in the Probate Proceeding, or in any other legal proceeding, the nature and amount of any such claim, whether such claim has been accepted or rejected (and in the case of a partial rejection, the portion that has been partially accepted), and, to the extent that any such claim has been rejected, the procedural posture of such claim and the Estate's good faith opinion as to the validity of such claim;

d. True and correct copies of all life insurance policies held at any time by Mr. McClendon or on Mr. McClendon's life, and all related agreements and forms, any pledges, assignments, conveyances, or transfers of any such policy, and all notes or loan agreements secured by or otherwise relating to any such policy, including any notes payable to, or loans from, The Michigan Trust (formerly McClendon Children's Trust), together with detailed information

21

regarding the value of any such policy, the owners and holders of any such policy, the sources of all premiums paid in connection with any such policy, the beneficiaries of any such policy, any proceeds or other benefits paid pursuant to any such policy, the recipients of any proceeds or other benefits paid pursuant to any such policy, any amounts that Mr. McClendon borrowed from the Michigan Trust in connection with any such policy, and any amounts paid to the Michigan Trust by Mr. McClendon or any entities owned by, controlled by, or affiliated with Mr. McClendon;

e. True and correct copies of all trust agreements pertaining to the Aubrey K. McClendon Revocable Trust and all documents related thereto, including, without limitation, documents evidencing any transactions between Mr. McClendon, or any entities owned by, controlled by, or affiliated with Mr. McClendon, on the one hand, and the Aubrey K. McClendon Revocable Trust, on the other;

f. All notes or loan agreements between any of Larchmont Resources, LLC, Jamestown Resources, LLC, or Pelican Energy, LLC (collectively, the "EIG Creditors"), on the one hand, and Mr. McClendon, on the other; all agreements or other documents evidencing any advances to Mr. McClendon from EIG Management Company, LLC ("EIG") or any of the EIG Creditors; all agreements that Mr. McClendon entered into with EIG in connection with any restructuring or release of any of the EIG Creditors, including, without limitation, any pledges, assignments, conveyances, or transfers of any interests of Mr. McClendon in any of the EIG Creditors; all guarantee

agreements that Mr. McClendon entered into with EIG or any of the EIG Creditors; any agreements or other documents evidencing any forgiveness of Mr. McClendon's financial obligations to EIG or any of the EIG Creditors; and any documents evidencing any potential liability, or any acknowledgment of non-liability, partial liability, or limited liability, of Mr. McClendon or the Estate to EIG in connection with any notes payable or other debts owed by the EIG Creditors to EIG;

g.  Documents sufficient to show the current valuation of all Estate assets;

h.  All documentation concerning the value of the Oklahoma City Thunder, as well as the market value of the Estate's interests in the same, that may have been prepared by or on behalf of the Estate, including without limitation any valuation and appraisal reports concerning the Oklahoma City Thunder and the Estate's interests therein, all supporting documentation used to prepare any valuation and appraisal reports concerning the Oklahoma City Thunder and the Estate's interests therein, and all documentation concerning the Oklahoma City Thunder and the Estate's interests therein prepared or submitted in connection with any tax returns filed by or on behalf of Mr. McClendon or the Estate;

i.  All documents relating to any potential sale, purchase, or other transfer of the Estate's interests in the Oklahoma City Thunder, along with all communications with any third parties regarding any potential sale, purchase, or other transfer of the Estate's interests in the Oklahoma City Thunder, whether prior or in the future; and

j.   All notes and loan agreements between ArCap PBC, LLC and SCC Funding
LLC.

103.   Wilmington Trust requested from the Estate, at various times, the foregoing information and documents pursuant to the Financial Information Covenants.

104.   The Financial Information Covenants obligate the Estate to deliver to Wilmington Trust all of the foregoing information and documents.

105.   The Personal Representative's acts and omissions have created an actual and substantial controversy between parties having adverse legal interests as to the Estate's obligations under the Financial Information Covenants, which controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

106.   Wilmington Trust is entitled to a judicial determination and declaration that the Financial Information Covenants are binding on the Estate, the Personal Representative, and the Special Administrator and that the Financial Information Covenants require the Estate to deliver immediately to Wilmington Trust, with respect to both Mr. McClendon and the Estate, those categories of information set forth in the Financial Information Covenants, including, without limitation, the information and documents set forth in paragraph 102 herein.

**FOURTH CAUSE OF ACTION**
**SPECIFIC PERFORMANCE OF THE FINANCIAL INFORMATION COVENANTS**
**(against all Defendants)**

107.   Wilmington Trust repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though set forth in full herein.

108.   The Estate has not complied with the Estate's obligations under the Financial Information Covenants.

109.   Wilmington Trust and the Lenders require the information to which they are entitled under the Financial Information Covenants to, *inter alia*, assess the Estate's assets and liabilities.

110.   Certain of the Estate assets, which are the subject of the requests under the Financial Information Covenants, are unique and have no established market value.

111.   Wilmington Trust has substantially performed any obligations of Wilmington Trust under the Guaranty and is willing and able to perform any such remaining obligations under the Guaranty.

112.   Upon information and belief, the Estate is able to perform the Estate's obligations under the Guaranty with respect to the Financial Information Covenants.

113.   As a direct and proximate result of the Estate's noncompliance with the Financial Information Covenants, Wilmington Trust and the Lenders have suffered, and continue to suffer, harm, for which Wilmington Trust has no adequate remedy at law.

114.   Wilmington Trust is entitled to specific performance of the Estate's obligations under the Financial Information Covenants.

## **PRAYER FOR RELIEF**

WHEREFORE, Wilmington Trust respectfully requests that this Court grant relief as follows:

A.   As to the first cause of action, judgment on the Guaranty, as a guaranty of payment, in favor of Wilmington Trust and against the Estate for all Obligations under the Credit Agreement and the Guaranty, including interest accrued and accruing, costs, expenses, attorney's fees, indemnification obligations, and all other Obligations;

B.     As to the second cause of action, issue a declaratory judgment in its favor holding that the Negative Covenants are binding on the Estate, the Personal Representative, and the Special Administrator; issue a declaratory judgment in its favor holding that any distribution from the Estate to any third parties of any equity interests in any business entities owned or controlled by Mr. McClendon, including but not limited to SCOOP Holdings or SEC, is barred by the terms of the Guaranty, and issue a declaratory judgment in its favor holding that any amendment or modification by the Estate, or by another person permitted or caused by the Estate, of any organizational documents of any business entities owned or controlled by Mr. McClendon, including but not limited to SCOOP Holdings or SEC, in a manner adverse to the rights and interests of Wilmington Trust or the Lenders, is barred by the terms of the Guaranty;

C.     As to the third cause of action, issue a declaratory judgment in its favor holding that the Financial Information Covenants are binding on the Estate, the Personal Representative, and the Special Administrator and that the Financial Information Covenants require the Estate to deliver immediately to Wilmington Trust, with respect to both Mr. McClendon and the Estate, those categories of information set forth in the Financial Information Covenants, including, without limitation, all information and documents set forth in paragraph 102 herein;

D.     As to the fourth cause of action, order specific performance of the Estate's obligations under the Financial Information Covenants, including but not limited to an order requiring the Estate to deliver immediately to Wilmington Trust all information and documents set forth in paragraph 102 herein;

E.      Award costs, expenses, and attorney's fees; and

F.      Award such other and further relief as this Court may deem just and proper.


Dated:   September 1, 2017
         New York, New York

                              LATHAM & WATKINS LLP

                    By:     /s/ Blair Connelly
                            Blair Connelly
                            885 Third Avenue
                            New York, New York 10022
                            Tel:    (212) 906-1200
                            Fax:    (212) 751-4864
                            Blair.Connelly@lw.com

                            *Attorneys for Plaintiff Wilmington Trust, National
                            Association, as Administrative Agent and Collateral
                            Agent*