# EXHIBIT C

# GUARANTY

This Guaranty (this "**Guaranty**"), dated as of November 6, 2014, is by and between Aubrey K. McClendon, a natural person (the "**Guarantor**"), and WILMINGTON TRUST, NATIONAL ASSOCIATION, as administrative agent and collateral agent (the "**Agent**").

WHEREAS, it is a condition precedent to the execution of the Credit and Guaranty Agreement dated as of the date hereof by and among American Energy Partners Holdco, LLC (the "**Borrower**"), American Energy Partners, LP, certain subsidiaries of the Borrower, the Lenders from time to time party thereto, the Agent and the other Agents party thereto, that the Guarantor absolutely and unconditionally guarantees all of the Obligations (as such term is defined in the Credit Agreement); and

WHEREAS, the Guarantor has agreed to absolutely and unconditionally, and jointly and severally with all other Guarantors (as such term is defined in the Credit Agreement), guarantee the Obligations.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged by the parties hereto, the Guarantor hereby agrees as follows:

1.     Definitions.  Capitalized terms used herein but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Credit Agreement.

2.     Guaranty.   To induce the Lenders to make the Loans under the Credit Agreement, Guarantor hereby unconditionally guarantees, jointly and severally with all other Guarantors (as such term is defined in the Credit Agreement), the prompt and complete payment and performance when due, whether by demand, acceleration or otherwise, of the Obligations in the currency in which and as such Obligations are to be paid or performed.  Without limiting the generality of the foregoing, the Obligations shall include such indebtedness, obligations, and liabilities which may be or hereafter become unenforceable or shall be an allowed or disallowed claim under any proceeding or case commenced by or against the Guarantor or any other Credit Party under any Debtor Relief Law and shall include interest that accrues after the commencement by or against any Credit Party of any proceeding under any Debtor Relief Laws.

3.     Guaranty Absolute.  (a)  This is a guaranty of payment and not merely of collection.  Guarantor's obligations under this Guaranty shall be absolute and unconditional, irrespective of: (a) any lack of capacity or authority of the Borrower or any lack of validity, regularity or enforceability of any provision of any Credit Document or other agreement relating to the Obligations; (b) any change in the amount, time, manner or place of payment of, or in any other term of, all or any of the Credit Documents or Obligations, or any other amendment or waiver of or any consent to departure from any of the terms of any Credit Document or Obligation, (c) any variation, extension, waiver, compromise or release of any or all of the Obligations or of any security from time to time provided therefor, (d) any release or amendment or waiver of, or consent to departure from, any other Guarantor or any other guaranty or support document, or any exchange, release or non-perfection of any Collateral, for all or any of the Credit Documents or Obligations; or (e) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure or otherwise affect any term of any Credit Document or Obligation. This Guaranty shall not be affected by any circumstance (other than complete, irrevocable payment or performance) that might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.  The Secured Parties make no representation or warranty in respect of any such circumstance and have no duty or responsibility whatsoever to Guarantor in respect of the management and maintenance of the Obligations or any Collateral therefor.  The Secured Parties shall not be obligated to file any claim relating to the Obligations in the event that the Borrower becomes subject to a bankruptcy, reorganization or similar proceeding, and the failure by the Secured Parties to so file shall not affect Guarantor's obligations hereunder.  In the event that any payment to the Secured Parties in respect of any Obligations is rescinded or must otherwise be returned for any reason whatsoever, Guarantor shall remain liable hereunder in respect of such Obligations, and Guarantor's obligations hereunder shall be reinstated, all as if such payment had not been made. Guarantor waives any right of setoff or counterclaim which Guarantor may have or acquire against any of the Secured Parties. Guarantor agrees that this Guaranty is a continuing guaranty and shall cover any present Obligations and also all Obligations that have been created or may hereafter be created as such Obligations may be changed from time to time.  Guarantor agrees that the Secured Parties may deal freely with the Borrower with respect to the Obligations, without notice to Guarantor, the same as if this Guaranty had not been given, all without in any way affecting Guarantor's obligations hereunder.  The Agent may enforce this Guaranty upon the occurrence of an Event of Default notwithstanding the existence of any dispute between any Credit Party and any Secured Party with respect to the existence of such Event of Default.   The obligations of the Guarantor hereunder are independent of the obligations of Borrower and the obligations of any other Credit Party, and a separate action or actions may be brought and prosecuted against the Guarantor whether or not any action is brought against Borrower or any of such other Credit Parties and whether or not any other Credit Party is joined in any such action or actions.  So long as any Obligations remain outstanding, Guarantor shall not, without the prior written consent of Agent acting pursuant to the instructions of Requisite Lenders, commence or join with any other Person in commencing any bankruptcy, reorganization or insolvency case or proceeding of or against Borrower or any other Guarantor.  The obligations of the Guarantor hereunder shall not be reduced, limited, impaired, discharged, deferred, suspended or terminated by any case or proceeding, voluntary or involuntary, involving the bankruptcy, insolvency, receivership, reorganization, liquidation or arrangement of Borrower or any other Credit Party or by any defense which Borrower or any other Credit Party may have by reason of the order, decree or decision of any court or administrative body resulting from any such proceeding.

(b)     The Guarantor shall make all payments hereunder without setoff or counterclaim and free and clear of and without deduction for any taxes, levies, imposts, duties, charges, fees, deductions, withholdings, compulsory loans, restrictions or conditions of any nature now or hereafter imposed or levied by any jurisdiction or any political subdivision thereof or

taxing or other authority therein unless the Guarantor is compelled by law to make such deduction or withholding.  If any such obligation (other than one arising with respect to taxes based on or measured by the income or profits of any Lender) is imposed upon the Guarantor with respect to any amount payable by it hereunder, the Guarantor will pay to the  Agent, on the date on which such amount is due and payable hereunder, such additional amount in Dollars as shall be necessary to enable the Agent to receive the same net amount which the Agent would have received on such due date had no such obligation been imposed upon the Guarantor.  The Guarantor will deliver promptly to the Agent certificates or other valid vouchers for all taxes or other charges deducted from or paid with respect to payments made by the Guarantor hereunder.

(c)     The Guarantor consents and agrees that the Secured Parties may, at any time and from time to time, without notice or demand, and without affecting the enforceability or continuing effectiveness hereof:  (a) amend, extend, renew, compromise, discharge, accelerate or otherwise change the time for payment or the terms of the Obligations or any part thereof; (b) take, hold, exchange, enforce, waive, release, fail to perfect, sell, or otherwise dispose of any security for the payment of this Guaranty or any Obligations; (c) apply such security and direct the order or manner of sale thereof as the Agent in its sole discretion may determine; and (d) release or substitute one or more of any endorsers or other guarantors of any of the Obligations.  Without limiting the generality of the foregoing, the Guarantor consents to the taking of, or failure to take, any action which might in any manner or to any extent vary the risks of the Guarantor under this Guaranty or which, but for this provision, might operate as a discharge of the Guarantor.

(d)      The Guarantor shall not exercise any right of subrogation, contribution, indemnity, reimbursement or similar rights with respect to any payments it makes under this Guaranty until all of the Obligations and any amounts payable under this Guaranty have been indefeasibly paid and performed in full and any Commitments of the Lenders or facilities provided by the Lenders with respect to the Obligations are terminated.  If any amounts are paid to the Guarantor in violation of the foregoing limitation, then such amounts shall be held in trust for the benefit of the Secured Parties and shall forthwith be paid to the Agent to reduce the amount of the Obligations, whether matured or unmatured.

(e)      In the event that acceleration of the time for payment of any of the Obligations is stayed, in connection with any case commenced by or against the Guarantor or any other Credit Party under any Debtor Relief Laws, or otherwise, all such amounts shall nonetheless be payable by the Guarantor immediately upon demand by the Agent.

4.      Representations and Warranties.  Guarantor represents and warrants to the Agent, on behalf of itself and the other Secured Parties, that:

(a)      Name, Etc.  Guarantor's legal name is correctly set forth on the signature page hereto and the other information regarding Guarantor set forth in this Agreement, including without limitation, below Guarantor's signature hereto, is true, correct and complete on the date hereof.

(b)      Enforceable Obligations.  Guarantor is at least twenty-one (21) years of age and is competent to enter into this Guaranty and the other Credit Documents to which Guarantor is a party and to perform Guarantor's obligations hereunder and thereunder.  The execution, delivery and performance by Guarantor of this Guaranty and the consummation of the transactions contemplated by this Guaranty (i) will not violate any law or regulation, or any order or decree of any court or governmental instrumentality (including Regulations U and X); (ii) will not conflict with or result in the breach or termination of, constitute a default under, or accelerate any performance required by any indenture, mortgage, deed of trust, lease, agreement or other instrument to which Guarantor is a party or by which Guarantor or any property of Guarantor is bound; (iv) will not result in the creation or imposition of any Lien upon any of the property of Guarantor; and (v) do not require the consent or approval of any Governmental Authority or any other Person, except such consents as have been obtained.  Each of the Credit Documents to which Guarantor is a party, when delivered hereunder or under the Credit Agreement, shall constitute a legal, valid and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms subject to the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization and other similar laws relating to or affecting creditors' rights generally and general principles of equity (whether considered in a proceeding in equity or law).

(c)      Compliance with Laws.  Guarantor is not in violation in any material respect of any applicable law, rule, regulation, order, judgment, writ or decree of any Governmental Authority applicable to Guarantor or the property of any of Guarantor.  There is no remedial or other corrective action that Guarantor is required to take to remain in compliance with any judgment, order, writ, injunction or decree of any Governmental Authority or to maintain any material permits, approvals or licenses granted by any Governmental Authority in full force and effect.  During the past ten (10) years, Guarantor has not been arrested or convicted of any material crime, been bankrupt, or been an officer or director of any company that has been the subject of a voluntary or involuntary proceeding under the United States Bankruptcy Code (11 U.S.C. § 101, et seq.).

(d)      Taxes.  Guarantor has filed or caused to be filed all federal, state and local tax returns that are required to be filed by it, which returns were true, accurate and complete in all material respects, and has paid or caused to be paid all taxes shown to be due and payable on such returns or on any assessments received by it.

(e)      Solvency.  After giving effect to the Term Loans, the application of the proceeds thereof and the execution and delivery of this Guaranty, Guarantor is Solvent.

(f)      Complete Disclosure.  All factual information, including, without limitation, all financial statements, furnished by or on behalf of Guarantor to the Agent and the Arrangers for purposes of or in connection with this Guaranty and the other Credit Documents is, and all other such factual information hereafter furnished by or on behalf of Guarantor will be, true and

accurate in all material respects on the date as of which such information is furnished and not incomplete by omitting to state any fact necessary to make such information not misleading at such time in light of the circumstances under which such information is provided.

(g)  Absence of Undisclosed Liabilities.  Guarantor has no liabilities or obligations, either accrued, absolute, contingent or otherwise, other than the liabilities and obligations set forth in the financial statements and financial representations previously delivered or made to the Agent and the Arrangers.

(h)  Foreign Assets Control Regulations, Etc.  Guarantor is not (i) in violation of the Trading with the Enemy Act of the United States of America (50 U.S.C. App. §§ 1 et seq.), as amended; (ii) on the Specially Designated Nationals and Blocked Person List maintained by OFAC, Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation; (iii) in violation of the USA Patriot Act, the FCPA, or any other applicable terrorism or money laundering laws, rules, regulations or orders; (iv) a Person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders; or (v) to the best of its knowledge, engaging in any dealings or transactions, or is otherwise associated, with any of the foregoing blocked Persons.  No part of the proceeds of the Loans will be used, directly or indirectly, (A) for the purpose of financing any activities or business of or with any Person or in any country or territory that at such time is the subject of any Sanctions or (B) for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of any Anti-Corruption Law.

(i)  No Default.  Guarantor is not, and after giving effect to this Guaranty shall not be, in default in the payment or performance of any contractual obligation, including any obligation under any Material Contract.

(j)  No Litigation.  There are no actions, suits, litigations, arbitrations, administrative or other legal proceedings, or investigations, pending or threatened, against Guarantor or any of the Collateral in which Guarantor has rights that will or could (a) not reasonably be expected to have a Material Adverse Effect, or (b) affect Guarantor's ability to enter into and perform its obligations under this Guaranty or any of the transactions contemplated by this Guaranty.  There have not been any judgment(s) against Guarantor in the past seven (7) years.

(k)  No Material Adverse Change.  Since the date of Guarantor's most recent financial statement, tax return or other financial representations delivered or made to the Agent, there has been no Material Adverse Effect.

(l)  Use of Proceeds.  Guarantor does not carry, and does not intend to carry, any Margin Stock and has not extended, and does not intend to extend, credit to others for the purposes of purchasing or carrying any Margin Stock.  No portion of the proceeds of any Credit Extension shall be used in any manner, whether directly or indirectly, that causes or could reasonably be expected to cause, such Credit Extension or the application of such proceeds to violate Regulation T, Regulation U or Regulation X of the Board of Governors or any other regulation thereof or to violate the Exchange Act.

(m)  Miscellaneous.  Guarantor has made its own credit analysis with respect to the Borrower and the Obligations and has made such arrangements with the Borrower not inconsistent with the provisions hereof as it has deemed appropriate.  Guarantor will receive substantial direct or indirect benefits in connection with the Obligations and the waivers of suretyship defenses are knowingly made in contemplation of such benefits.  Guarantor has not transferred, concealed or removed any of its property with the intent to hinder, delay or defraud its creditors, nor is it now making this Guaranty with intent to hinder, delay or defraud its creditors.

(n)  CEO.  Guarantor is the chief executive officer (or other equivalent title) or manager of each of the Credit Parties, their Subsidiaries, the Existing Investment Vehicles and the management companies that provide management services to the Investment Funds.

5.  Covenants.  For so long as Guarantor shall have any obligation under this Guaranty,  Guarantor shall:

(a)  Events of Defaults.  To the extent that notice has not previously been given pursuant to Section 8.1 of the Credit Agreement, give the Agent (which Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1 of the Credit Agreement) prompt written notice of (i) any Event of Default, (ii) any material default or event of default under (A) any of the other Credit Documents, (B) any other agreement between any Credit Party or any Affiliate thereof, on the one hand, and any Secured Party or Affiliate thereof, on the other hand, (iii) any payment default under any other Indebtedness of any Credit Party or any Affiliate thereof owing to any entity, lender or other Person (other than any Secured Party or Affiliate thereof) having an aggregate outstanding principal amount in excess of $1,000,000 or (iv) any default under any Material Contract, in each case as soon as Guarantor becomes aware of such breach.

(b)  Execution of Supplemental Instruments.  Execute and deliver to the Agent (which Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1 of the Credit Agreement) from time to time, upon demand, such supplemental agreements, statements, assignments, transfers, instructions, instruments or documents as the Agent or Required Lenders may reasonably request, in order that the full intent of this Guaranty may be carried into effect.  In furtherance and not in limitation of the foregoing, Guarantor shall take such actions as Agent may reasonably request from time to time to

ensure that the Obligations are guaranteed by Guarantor and are secured by the Collateral (including Equity Interests in subsidiaries of the Credit Parties).

(c)     <u>Obligations and Taxes</u>.  Pay and discharge promptly when due all material taxes, assessments and governmental charges or levies imposed upon it or upon its income or assets before the same shall become delinquent or in default, as well as all lawful claims for labor, materials and supplies or otherwise, which, if unpaid, might give rise to material Liens or material charges upon such assets or any part thereof; <u>provided</u>, <u>however</u>, that Guarantor shall not be required to pay and discharge or to cause to be paid and discharged any such tax, assessment, charge, levy or claim so long as the validity or amount thereof shall be contested in good faith by appropriate proceedings.

(d)     <u>Litigation</u>.  Give the Agent prompt written notice (which Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1 of the Credit Agreement) of the filing or commencement of any action, suit or proceeding against the Guarantor, whether at law or in equity or by or before any court or any Governmental Authority, in each case (i) that could reasonably be expected to have a Material Adverse Effect or (ii) where the amount demanded is in excess of $5,000,000.

(e)     <u>USA Patriot Act, OFAC Compliance</u>.  Provide such information and take such actions as are reasonably requested by the Agent and the Lenders in order to assist the Agent and the Lenders with compliance with the USA Patriot Act and the FCPA; and the Guarantor shall at all times comply with OFAC,  the USA Patriot Act and the FCPA.

(f)     <u>Solvency</u>.  At all times be Solvent.

(g)     <u>Liens, Dispositions and Distributions</u>.  (i) Not create, incur, assume or suffer to exist any lien or other encumbrance on the Collateral, except in favor of the Lender pursuant to the Security Documents, (ii) not sell, transfer, assign or otherwise dispose of, or dividend or otherwise distribute, whether directly or indirectly, any of the Equity Interests in a Credit Party, any subsidiary or any Investment Vehicle held, directly or indirectly, by the Guarantor, except the Guarantor may sell, transfer, assign or otherwise dispose of (but not dividend or otherwise distribute), either directly or indirectly, up to 50% of the aggregate Equity Interests the Guarantor holds, directly or indirectly, in any such Investment Vehicle as of the Closing Date (or, in the case of any Future Investment Vehicle, as of the date that the Guarantor's investment in such Future Investment Vehicle is consummated) in exchange for fair market value thereof, so long as the proceeds thereof are used to make a prepayment of the Term Loan to Agent in accordance with Section 2.14 of the Credit Agreement, and (iii) except with respect to restrictions by reason of customary provisions restricting assignments, subletting or other transfers contained in leases, licenses and similar agreements entered into in the ordinary course of business (provided that such restrictions are limited to the property or assets subject to such leases, licenses or similar agreements, as the case may be), not enter into any agreement prohibiting the creation or assumption of any Lien upon any of the Collateral, whether now owned or hereafter acquired, to secure the Obligations.

(h)     <u>Minimum Net Worth</u>. At all times maintain a minimum net worth (as calculated in a manner consistent with the Guarantor's Statement of Financial Condition dated June 30, 2014 as furnished to the Agent and the Arrangers prior to the Closing Date, which, for the avoidance of doubt, shall reflect any Indebtedness of Guarantor, including this Guaranty and any other guaranty of Indebtedness of any other Person) of not less than $500,000,000.

(i)     <u>Negative Pledge</u>.  At all times during the term hereof, not pledge, mortgage, hypothecate, transfer, sell, encumber, grant a fixed charge upon, dispose of, or in any way impair the title to (i) any direct or indirect Equity Interest in, (ii) distributions from, or (iii) assets of any other Credit Party, or any part thereof or proceeds therefrom, or permit any other Person to do any of the foregoing.

(j)     <u>Name, Etc.</u>  Not change Guarantor's (i) legal name, (ii) address or (iii) principal residence unless Guarantor shall have (i) notified the Agent in writing at least fifteen (15) days prior to any such change, identifying such new proposed name, identity or principal residence, and providing such other information in connection therewith as the Agent or Arrangers may reasonably request and (ii) taken all actions reasonably necessary or advisable to maintain the continuous validity, perfection and the same or better priority of the Collateral Agent's security interest in the Collateral granted or intended to be granted and agreed to under the Collateral Documents.

(k)     <u>Compliance with Laws</u>.  Comply in all material respects with all applicable laws, statutes, codes, ordinances, regulations, rules, orders, awards, judgments, decrees, injunctions, approvals and permits.

(l)     <u>Financial Information</u>.  Deliver to the Agent (which Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1 of the Credit Agreement): (a) attached to a Compliance Certificate in the form of Exhibit A attached hereto, within 75 days following the end of each calendar quarter, signed unaudited financial statements of Guarantor, in substantially the same form submitted to the Agent and Arrangers prior to the Closing Date; (b) within 15 days following the filing thereof (but not later than October 31 of the year following such tax year), copies of the most recently filed federal and state tax returns of Guarantor; and (c) promptly upon the reasonable request of the Agent or any Lender, but in any event no later than thirty (30) days after receipt of such request, such other financial information regarding the Guarantor as so requested.

(m)     <u>Amendments to Organizational Documents</u>. (i) Not amend or otherwise modify, or cause any other Person to amend or otherwise modify, any Organizational Documents of any Credit Party or any subsidiary thereof, any Investment Vehicle, any Investment Fund or any other Persons that hold, directly or indirectly, any Equity Interests in any Investment Vehicle or

4

any Investment Fund in a manner adverse to the rights and interests of the Agent or the Lenders under the Credit Documents, and (ii) give the Agent prompt written notice (which Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1 of the Credit Agreement) of any amendment or other modification to any Organizational Documents of any Credit Party or any subsidiary thereof, any Investment Vehicle, any Investment Fund or any other Person that holds, directly or indirectly, any Equity Interests in any Investment Vehicle or any Investment Fund.

6.     Waiver.  The Guarantor waives to the fullest extent permitted by law (a) any defense arising by reason of any disability or other defense of any Credit Party, or the cessation from any cause whatsoever (including any act or omission of any Secured Party) of the liability of any other Credit Party; (b) any defense based on any claim that the Guarantor's obligations exceed or are more burdensome than those of any other Credit Party; (c) the benefit of any statute of limitations affecting the Guarantor's liability hereunder; (d) any right to require the Agent to proceed against any other Credit Party, proceed against or exhaust any security for the Obligations, or pursue any other remedy in the Agent's power whatsoever and any defense based upon the doctrine of marshalling of assets or of election of remedies; (e) any benefit of and any right to participate in any security now or hereafter held by the Agent; (f) any fact or circumstance related to the Obligations which might otherwise constitute a defense to the obligations of the Guarantor under this Guaranty and (g) to the fullest extent permitted by law, any and all other defenses or benefits that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties other than the defense that the Obligations have been fully performed and indefeasibly paid in full in cash.  The Guarantor expressly waives all presentments, demands for payment or performance, notices of nonpayment or nonperformance, protests, notices of protest, notices of dishonor and all other notices or demands of any kind or nature whatsoever with respect to the Obligations, and all notices of acceptance of this Guaranty or of the existence, creation or incurrence of new or additional Obligations. This Guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Obligations or any instrument or agreement evidencing any Obligations, or by the existence, validity, enforceability, perfection, non-perfection or extent of any collateral therefor, or by any fact or circumstance relating to the Obligations which might otherwise constitute a defense to the obligations of the Guarantor under this Guaranty, and the Guarantor hereby irrevocably waives any defenses it may now have or hereafter acquire in any way relating to any or all of the foregoing.

7.     Waiver of Subrogation.  Guarantor agrees not to exercise any rights against the Borrower which it may acquire by way of subrogation or by any indemnity, reimbursement or other agreement until all the Obligations have been indefeasibly paid in full in cash and the Credit Documents have been terminated.  If any amount shall be paid to Guarantor in violation of the preceding sentence, such amount shall be held in trust for the benefit of the Secured Parties and shall forthwith be paid to the Agent to be credited and applied to the Obligations, whether matured or unmatured.

8.     Successors and Assigns.  This Guaranty shall be binding upon Guarantor, Guarantor's successors and assigns and Guarantor's estate and legal representatives in the event of the death or incapacity of Guarantor, whether or not an executor, administrator, guardian, committee, trustee, or other representative has been appointed to Guarantor's estate, and shall inure to the benefit of the Agent's successors and assigns, and to the individual managing directors and assigns of the Agent or any successor of the Agent.  Neither Guarantor's rights or  obligations hereunder nor any interest herein may be assigned or delegated by the Guarantor without the prior written consent of the Agent.

9.     Severability.  Any provision in this Guaranty that is held to be inoperative, unenforceable, or invalid in any jurisdiction shall, as to that jurisdiction, be inoperative, unenforceable, or invalid without affecting the remaining provisions of this Guaranty in that jurisdiction or the operation, enforceability, or validity of that provision in any other jurisdiction.

10.     Termination.  This Guaranty is a continuing and irrevocable guaranty of all Obligations now or hereafter existing and shall remain in full force and effect until all Obligations and any other amounts payable under this Guaranty are indefeasibly paid in full in cash and any commitments of the Lenders or facilities provided by the Lenders with respect to the Obligations are terminated.  Notwithstanding the foregoing, this Guaranty shall continue in full force and effect or be revived, as the case may be, if any payment by or on behalf of any Credit Party or the Guarantor is made, or the Agent exercises its right of setoff , in respect of the Obligations and such payment or the proceeds of such setoff or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by the Agent in its discretion) to be repaid to a trustee, receiver or any other party, in connection with any proceeding under any Debtor Relief Laws or otherwise, all as if such payment had not been made or such setoff had not occurred and whether or not the Agent is in possession of or has released this Guaranty and regardless of any prior revocation, rescission, termination or reduction.  The obligations of the Guarantor under this paragraph shall survive termination of this Guaranty.

11.     Amendments.  Guarantor agrees that no agreement on the Secured Parties' behalf to waive or modify this Guaranty or any provision hereof shall be valid or binding unless evidenced by a writing signed by the Agent and otherwise consummated in accordance with the terms of the Credit Agreement.  No failure on the part of the Secured Parties to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Secured Parties of any right, remedy or power hereunder preclude any other or future exercise of any other right, remedy or power.  Each and every right, remedy and power hereby granted to the Secured Parties or allowed the Secured Parties by law or other agreement shall be cumulative and not exclusive of any other right, remedy or power, and may be exercised by the Secured Parties from time to time.

12.     Expenses.  Guarantor agrees, jointly and severally with all other Guarantors (as such term is defined in the Credit Agreement), to pay on demand all out-of-pocket expenses (including the reasonable fees and expenses of counsel) in any way relating to the enforcement or protection of the Secured Parties' rights hereunder or in connection with a breach by the

NY\6585032.9

Borrower of the Obligations, in each case to the extent such expenses would be payable pursuant to Section 10.2 of the Credit Agreement.

13.      **APPLICABLE LAW.  THIS GUARANTY AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER (INCLUDING, WITHOUT LIMITATION, ANY CLAIMS SOUNDING IN CONTRACT LAW OR TORT LAW ARISING OUT OF THE SUBJECT MATTER HEREOF AND ANY DETERMINATIONS WITH RESPECT TO POST-JUDGMENT INTEREST) SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.**

14.      **CONSENT TO JURISDICTION.  SUBJECT TO CLAUSE (E) OF THE FOLLOWING SENTENCE, ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY PARTY ARISING OUT OF OR RELATING HERETO OR ANY OTHER CREDIT DOCUMENTS, OR ANY OF THE OBLIGATIONS, SHALL BE BROUGHT IN ANY FEDERAL COURT OF THE UNITED STATES OF AMERICA SITTING IN THE BOROUGH OF MANHATTAN OR, IF THAT COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION, IN ANY STATE COURT LOCATED IN THE CITY AND COUNTY OF NEW YORK.  BY EXECUTING AND DELIVERING THIS GUARANTY, GUARANTOR, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY (A) ACCEPTS GENERALLY AND UNCONDITIONALLY THE EXCLUSIVE (SUBJECT TO CLAUSE (E) BELOW) JURISDICTION AND VENUE OF SUCH COURTS; (B) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (C) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE GUARANTOR AT ITS ADDRESS PROVIDED IN ACCORDANCE WITH SECTION 15; (D) AGREES THAT SERVICE AS PROVIDED IN CLAUSE (C) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE GUARANTOR IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT; AND (E) AGREES THAT AGENTS AND LENDERS RETAIN THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO BRING PROCEEDINGS AGAINST GUARANTOR IN THE COURTS OF ANY OTHER JURISDICTION IN CONNECTION WITH THE ENFORCEMENT OF ANY JUDGMENT, AND HEREBY SUBMITS TO THE JURISDICTION OF, AND CONSENTS TO VENUE IN, ANY SUCH COURT.**

15.      <u>Giving Notice</u>.  Unless otherwise provided herein, all notices and other communications provided to any party hereto under this Guaranty or any other Credit Document shall be in writing or by facsimile and addressed or delivered to such party at its address as follows (unless otherwise designated in writing to the other parties):  (i) if to the Guarantor, at the address set forth below the Guarantor's name on the signature page hereto and (ii) if to the Agent, at the address set forth below the Agent's name on the signature page hereto.  Unless otherwise provided herein, any notice, if mailed and properly addressed with postage prepaid, shall be deemed given three (3) Business Days after being sent; any notice, if transmitted by facsimile, shall be deemed given when transmitted; any notice, if hand delivered, shall be deemed given on the date of such delivery; any notice, if mailed by overnight courier, shall be deemed given on the date of such delivery.

16.      <u>Joint and Several Liability</u>.  Guarantor agrees that Guarantor will be jointly and severally liable for the Obligations with the other Guarantors (as such term is defined in the Credit Agreement). Notice provided by the Agent to Guarantor will be deemed notice to all Guarantors.

17.      **WAIVER OF JURY TRIAL.  EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING HEREUNDER OR UNDER ANY OF THE OTHER CREDIT DOCUMENTS OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION OR THE AGENT/GUARANTOR RELATIONSHIP THAT IS BEING ESTABLISHED. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  EACH PARTY HERETO ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS GUARANTY, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS.  EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS SECTION 17 AND EXECUTED BY EACH OF THE PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO OR ANY OF THE OTHER CREDIT DOCUMENTS OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOANS MADE UNDER THE CREDIT AGREEMENT.  IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

[remainder of page intentionally left blank; signature page follows]

NY\6585032.9

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the dated specified in the preamble.

### NOTICE TO INDIVIDUAL GUARANTORS

Please note that you are being asked to guarantee the Borrower's Obligations as described in Section 2 of this Agreement.  Think carefully before you do so.  If the Borrower does not pay its Obligations, you will have to.  Be sure you can afford to pay if you have to, and that you want to accept this responsibility.  You may have to pay up to the full amount of the Borrower's Obligations if the Borrower does not pay.  You may also have to pay any late fees or collection costs that may apply, which would increase this amount. The Secured Parties can collect these Obligations from you without first trying to collect from the Borrower.  The Secured Parties can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, and offsetting other accounts you hold at any of the Secured Parties.  If payment of the Obligations is ever in default, we may report that default on your credit report.

Principal Residence (if an individual):

6902 Avondale
Oklahoma City, OK 73116

Notice Address (if different from above):

Aubrey K. McClendon
301 NW 63rd, Suite 600
Oklahoma City, OK 73116

With a copy to:

Scott R. Mueller
301 NW 63rd, Suite 600
Oklahoma City, OK 73116

Ray Lees, Esquire
5520 N. Francis Ave
Oklahoma City, OK 73118

By: _____

Name: Aubrey K. McClendon

Existing Margin Account (if any): _____ N/A

[Signature Page to Guaranty for Credit Agreement to American Energy Partners Holdco, LLC]

Acknowledged and Agreed
as of the date first above written:

AGENT:

WILMINGTON TRUST, NATIONAL ASSOCIATION

By: _____

Name: _____Renee Kuhl_____

Title: _____Vice President_____

Address:    Wilmington Trust, National Association
            50 South Sixth Street, Suite 1290
            Minneapolis, Minnesota 55402
            Attention: Josh James
            E-mail: jjames@wilmingtontrust.com

[Signature Page to Guaranty for Credit Agreement to American Energy Partners Holdco, LLC]

**Exhibit A**

**Compliance Certificate**

EXHIBIT A TO
GUARANTY

## COMPLIANCE CERTIFICATE

THE UNDERSIGNED HEREBY CERTIFIES AS FOLLOWS:

1.      Reference is hereby made to that certain Guaranty (the "<u>Guaranty</u>"), dated as of November 6, 2014, by and between, Aubrey K. McClendon, individually, as guarantor (the "<u>Guarantor</u>"), and Wilmington Trust, National Association, as administrative agent (the "<u>Administrative Agent</u>"), whereby Guarantor guarantees the obligations under that certain Credit and Guaranty Agreement, dated as of November 6, 2014, by and between American Energy Partners Holdco, LLC, American Energy Partners, LP, certain Subsidiaries of Borrower, as Guarantors, the Lenders party thereto from time to time, Goldman Sachs Lending Partners LLC, as Syndication Agent, the Administrative Agent, and Credit Suisse AG, Cayman Islands Branch and Morgan Stanley Senior Funding, Inc., as Co-Documentation Agents .

2.      I have no knowledge of the existence of any condition or event which constitutes an Event of Default or default during or at the end of the accounting period covered by the attached financial statements or as of the date of this Certificate, except as set forth in a separate attachment, if any, to this Certificate, describing in detail, the nature of the condition or event, the period during which it has existed and the action which the Cred Parties have taken, are taking, or propose to take with respect to each such condition or event.

3.      The foregoing certifications, together with the financial statements delivered with this Certificate in support hereof, are made and delivered as of [_____], 20[__] pursuant to Section 5(l) of the Guaranty.

By: _____
        Aubrey K. McClendon, individually

EXECUTION COPY

**SECOND AMENDMENT
TO CREDIT AND GUARANTY AGREEMENT**

**AND FIRST AMENDMENT TO GUARANTY**

 **THIS SECOND AMENDMENT TO CREDIT AND GUARANTY AGREEMENT AND FIRST AMENDMENT TO GUARANTY** (this **"Amendment"**) is dated as of May 26, 2015 and is entered into by and among **AMERICAN ENERGY PARTNERS HOLDCO, LLC**, a Delaware limited liability company (**"Borrower"**), **AMERICAN ENERGY PARTNERS, LP**, an Oklahoma limited partnership (**"Holdings"**), **WILMINGTON TRUST, NATIONAL ASSOCIATION**, as Administrative Agent (**"Administrative Agent"**), the Lenders, Aubrey K. McClendon, a natural person (**"Personal Guarantor"**), and, for purposes of Section IV hereof, the **GUARANTORS** listed on the signature pages hereto, and is made with reference to (i) that certain **CREDIT AND GUARANTY AGREEMENT** dated as of November 6, 2014 (as amended through the date hereof, the **"Credit Agreement"**) by and among the Borrower, Holdings, the subsidiaries of the Borrower named therein, the Lenders, the Administrative Agent, Collateral Agent and the other Agents named therein, and (ii) that certain **GUARANTY** dated as of November 6, 2014 (as amended through the date hereof, the **"Guaranty"**) by and between the Personal Guarantor and the Administrative Agent.  Capitalized terms used herein without definition shall have the same meanings herein as set forth in the Credit Agreement after giving effect to this Amendment.

**RECITALS**

 **WHEREAS,** the Credit Parties have requested that the Lenders agree to amend certain provisions of the Credit Agreement as provided for herein; and

 **WHEREAS,** subject to certain conditions, the Lenders party hereto are willing to agree to such amendment relating to the Credit Agreement and a related amendment to the Guaranty.

 **NOW, THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

**SECTION I. AMENDMENTS TO CREDIT AGREEMENT**

**1.1 <u>Amendments to Section 1.1</u>.**

 Section 1.1 of the Credit Agreement is hereby amended by amending and restating the definitions of "Future Investment Vehicle" and "Unrestricted Subsidiaries" in their entirety to read as follows:

 "**Future Investment Vehicle**" means each of AE Midco, AE Minco and each other oil and gas enterprise (but excluding any Investment Fund) in which the Borrower and its subsidiaries acquire an Equity Interest following the Closing Date, whether or not such interest is acquired using, directly or indirectly, the proceeds of the Loans; provided, that "Future Investment Vehicles" shall not include any Existing Investment Vehicle, any direct or indirect subsidiary or parent entity thereof, or any subsidiary of any Credit Party

that, directly or indirectly, holds any Equity Interests in any Existing Investment Vehicle (or any such subsidiary or parent entity thereof).

"**Unrestricted Subsidiaries**" means, in the event that the Credit Parties do not have any Indebtedness arising out of or otherwise in connection with Indebtedness or other obligations of (x) the AE Holding Companies or any of their subsidiaries, the AE Holding Companies and their subsidiaries and (y) Arcadia Capital Australia, LLC or any of its subsidiaries, Arcadia Capital Australia, LLC and its subsidiaries.

Section 1.1 of the Credit Agreement is hereby amended by adding the following definitions in appropriate alphabetical order:

"**Blocked Account Agreement (Operating Accounts)**" means an agreement executed by a depository bank, securities intermediary or commodities intermediary and the Collateral Agent, for the benefit of the Secured Parties, and acknowledged and agreed by the Borrower, pursuant to which the Collateral Agent obtains a perfected First-Priority Lien on each of the Borrower's Deposit Accounts or securities, commodity or similar accounts (other than accounts in which amounts on deposit in all such accounts do not exceed $100,000 in the aggregate at any one time), in form and substance reasonably satisfactory to the Administrative Agent and the Arrangers.

"**Second Amendment Date**" means May 26, 2015.

## 1.2    **Amendments to Section 2.6.**

The first sentence of Section 2.6 of the Credit Agreement is hereby amended and restated in its entirety to read as follows:

"The proceeds of the Closing Date Term Loans shall be applied by Borrower in the manner as set forth on Schedule 2.6; provided that, notwithstanding anything to the contrary set forth on Schedule 2.6, Borrower may use proceeds of the Closing Date Term Loans (i) to make the interest payment due under this Agreement on or around May 6, 2015, (ii) to fund up to an aggregate of $7,457,124 in additional capital contributions to AEM and AEU by purchasing additional common units of American Energy – Appalachia Holdings, LLC, and (iii) to fund $5,000,000 in remaining capital commitments to AEW by purchasing common units of American Energy Woodford Holdings, LLC; provided further that Borrower shall give Administrative Agent prompt written notice (which Administrative Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1) of the consummation of the Investments contemplated by clauses (ii) and (iii) of the immediately preceding proviso."

## 1.3    **Amendments to Section 5.2.**

Section 5.2 of the Credit Agreement is hereby amended by inserting the following new subclause 5.2(c) to read as follows:

"(c) The Borrower shall execute and deliver to Administrative Agent within 30 days following the Second Amendment Date (or such later date as may be agreed to by

2

Administrative Agent in its sole discretion) (i) the Blocked Account Agreements (Operating Accounts) and (ii) the Collateral Documents necessary to evidence as Collateral those certain 8.00% Exchangeable Junior Subordinated Notes issued by American Energy Permian Holdings, LLC to Arcadia Capital AEPB, LLC.

**1.4**     **Amendments to Section 5.13.**

Section 5.13 of the Credit Agreement is hereby amended and restated in its entirety to read as follows:

"(i) Not (a) amend or otherwise modify, or cause any other Person to amend or otherwise modify, any Organizational Documents of any Credit Party or any subsidiary thereof, any Investment Vehicle, any Investment Fund or any other Persons that hold, directly or indirectly, any Equity Interests in any Investment Vehicle or any Investment Fund or (b) enter into, or cause any other Person to enter into, any Organizational Documents in respect of any subsidiary of a Credit Party formed or acquired after the Closing Date, in each case, in a manner adverse to the rights and interests of Administrative Agent or the Lenders under the Credit Documents, and (ii) give Administrative Agent prompt written notice (which Administrative Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1) of any (a) amendment or other modification to any Organizational Documents of any Credit Party or any subsidiary thereof, any Investment Vehicle, any Investment Fund or any other Person that holds, directly or indirectly, any Equity Interests in any Investment Vehicle or any Investment Fund or (b) entry into any Organizational Documents in respect of any subsidiary of a Credit Party formed or acquired after the Closing Date.  For the avoidance of doubt, the Organizational Documents of any Future Investment Vehicle, its immediate parent company or any subsidiary of any Credit Party that, directly or indirectly, holds any Equity Interests in such Future Investment Vehicle or such parent company that have been entered into in connection with Investments that are permitted under, and in accordance with, Section 5.15(ii) (without giving effect to the reference to this Section 5.13 in clause (ii)(B)(I) therein) shall not be deemed to be adverse to the rights and interests of Administrative Agent or the Lenders under the Credit Documents."

**1.5**     **Amendments to Section 5.15.**

Clauses (iii) and (iv) of Section 5.15 of the Credit Agreement are hereby amended and restated in their entirety to read as follows:

"(iii) Investments in the Unrestricted Subsidiaries (other than Arcadia Capital Australia, LLC and its subsidiaries) in an aggregate amount not to exceed $2,500,000 during the term of this Agreement, (iv) Investments existing on the Closing Date as set forth on Schedule 5.15 and (v) Investments described in clauses (ii) and (iii) of the proviso in Section 2.6."

3

## SECTION II.    AMENDMENT TO GUARANTY

Section 5(m) of the Guaranty is hereby amended and restated in its entirety to read as follows:

"(i) Not (a) amend or otherwise modify, or cause any other Person to amend or otherwise modify, any Organizational Documents of any Credit Party or any subsidiary thereof, any Investment Vehicle, any Investment Fund or any other Persons that hold, directly or indirectly, any Equity Interests in any Investment Vehicle or any Investment Fund or (b) enter into, or cause any other Person to enter into, any Organizational Documents in respect of any subsidiary of a Credit Party formed or acquired after the Closing Date, in each case, in a manner adverse to the rights and interests of Administrative Agent or the Lenders under the Credit Documents, and (ii) give the Agent prompt written notice (which Agent shall deliver to the Lenders by electronic communication in accordance with Section 10.1 of the Credit Agreement) of any (a) amendment or other modification to any Organizational Documents of any Credit Party or any subsidiary thereof, any Investment Vehicle, any Investment Fund or any other Person that holds, directly or indirectly, any Equity Interests in any Investment Vehicle or any Investment Fund or (b) entry into any Organizational Documents in respect of any subsidiary of a Credit Party formed or acquired after the Closing Date.   For the avoidance of doubt, the Organizational Documents of any Future Investment Vehicle, its immediate parent company or any subsidiary of any Credit Party that, directly or indirectly, holds any Equity Interests in such Future Investment Vehicle or such parent company that have been entered into in connection with Investments that are permitted under, and in accordance with, Section 5.15(ii) of the Credit Agreement (without giving effect to the reference to Section 5.13 of the Credit Agreement in clause (ii)(B)(I) therein) shall not be deemed to be adverse to the rights and interests of Administrative Agent or the Lenders under the Credit Documents."

## SECTION III.    CONDITIONS TO EFFECTIVENESS

This Amendment shall become effective as of May 6, 2015 only upon the satisfaction of all of the following conditions precedent (the date of satisfaction of such conditions being referred to herein as the **"Second Amendment Effective Date"**):

**A.    Execution**. Administrative Agent shall have received (i) a counterpart signature page of this Amendment duly executed by each of the Borrower and the Guarantors and (ii) counterpart signature pages of this Amendment duly executed by each of the Lenders.

**B.    Fees**.  The Administrative Agent shall have received all fees and other amounts due and payable on or prior to the Second Amendment Effective Date, including, to the extent invoiced, reimbursement or other payment of all out-of-pocket expenses required to be reimbursed or paid by the Borrower hereunder or any other Credit Document.

**C.    Necessary Consents.** Each Credit Party shall have obtained all material consents necessary or advisable in connection with the transactions contemplated by this Amendment.

**D.     Other Documents.**   Administrative Agent and Lenders shall have received such other documents, information or agreements regarding Credit Parties as Administrative Agent or Collateral Agent may reasonably request.

## SECTION IV.     REPRESENTATIONS AND WARRANTIES

In order to induce Lenders to enter into this Amendment and to amend the Credit Agreement in the manner provided herein, each Credit Party which is a party hereto represents and warrants to each Lender that the following statements are true and correct in all material respects:

**A.     Corporate Power and Authority.**   Each Credit Party (other than the Personal Guarantor), which is party hereto, has all requisite power and authority to enter into this Amendment and to carry out the transactions contemplated by, and perform its obligations under, the Credit Agreement as amended by this Amendment (the **"Amended Agreement"**).

**B.     Authorization of Agreements.**  The execution and delivery of this Amendment and the performance of the Amended Agreement have been duly authorized by all necessary action on the part of each Credit Party (other than the Personal Guarantor).

**C.     No Conflict.**  The execution and delivery by each Credit Party of this Amendment and the performance by each Credit Party of the Amended Agreement and the Guaranty as amended by this Amendment (the **"Amended Guaranty"**) do not and will not (i) violate (A) any provision of any law, statute, rule or regulation, or of the certificate or articles of incorporation or partnership agreement, other constitutive documents or by-laws of Holdings, the Borrower or any Credit Party or (B) any applicable order of any court or any rule, regulation or order of any Governmental Authority, (ii) be in conflict with, result in a breach of or constitute (alone or with notice or lapse of time or both) a default under any contractual obligation of the applicable Credit Party, where any such conflict, violation, breach or default referred to in clause (i) or (ii) of this Section IV.C., individually or in the aggregate could reasonably be expected to have a Material Adverse Effect, (iii) result in or require the creation or imposition of any Lien upon any of the properties or assets of each Credit Party (other than any Liens created under any of the Credit Documents in favor of Administrative Agent on behalf of Lenders), or (iv) require any approval of stockholders or partners or any approval or consent of any Person under any Contractual Obligation of each Credit Party, except for such approvals or consents which will be obtained on or before the Second Amendment Effective Date and except for any such approvals or consents the failure of which to obtain will not have a Material Adverse Effect.

**D.     Governmental Consents.**  No action, consent or approval of, registration or filing with or any other action by any Governmental Authority is or will be required in connection with the execution and delivery by each Credit Party of this Amendment, the performance by the Credit Parties (other than the Personal Guarantor) of the Amended Agreement and the performance by the Personal Guarantor of the Amended Guaranty, except for such actions, consents and approvals the failure to obtain or make which could not reasonably be expected to result in a Material Adverse Effect or which have been obtained and are in full force and effect.

E.    **Binding Obligation.**  This Amendment has been duly executed and delivered by each of the Credit Parties party thereto and constitutes a legal, valid and binding obligation of such Credit Party to the extent a party thereto, enforceable against such Credit Party in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, moratorium, reorganization or other similar laws affecting creditors' rights generally and except as enforceability may be limited by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

F.    **Absence of Default.**  No event has occurred and is continuing or will result from the consummation of the transactions contemplated by this Amendment that would constitute an Event of Default or a Default.

G.    **Competence of Personal Guarantor.**  The Personal Guarantor is at least twenty-one (21) years of age and is competent to enter into this amendment and to perform the Personal Guarantor's obligations hereunder and under the Amended Guaranty.

H.    **Incorporation of Representations and Warranties from Credit Agreement.** Each of the representations and warranties contained in Section 4 of the Amended Agreement and in Section 4 of the Amended Guaranty is and will be true and correct in all respects on and as of the Second Amendment Effective Date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case they were true and correct in all respects on and as of such earlier date.

**SECTION V.    ACKNOWLEDGMENT AND CONSENT**

Each AELP Guarantor hereby acknowledges that it has reviewed the terms and provisions of the Credit Agreement and this Amendment and consents to the amendment of the Credit Agreement effected pursuant to this Amendment.   The Personal Guarantor hereby acknowledges that it has reviewed the terms and provisions of the Guaranty and this Amendment and consents to the amendment of the Guaranty effected pursuant to this Amendment.   Each Guarantor hereby confirms that each Credit Document to which it is a party or otherwise bound and all Collateral encumbered thereby will continue to guarantee or secure, as the case may be, to the fullest extent possible in accordance with the Credit Documents the payment and performance of all "Obligations" under each of the Credit Documents to which is a party (in each case as such terms are defined in the applicable Credit Document).

Each Guarantor acknowledges and agrees that any of the Credit Documents to which it is a party or otherwise bound shall continue in full force and effect and that all of its obligations thereunder shall be valid and enforceable and shall not be impaired or limited by the execution or effectiveness of this Amendment.

Each Guarantor acknowledges and agrees that (i) notwithstanding the conditions to effectiveness set forth in this Amendment, such Guarantor is not required by the terms of the Credit Agreement, the Guaranty or any other Credit Document to consent to the amendments to the Credit Agreement and the Guaranty effected pursuant to this Amendment and (ii) nothing in the Credit Agreement, the Guaranty, this Amendment or any other Credit Document shall be

6

deemed to require the consent of such Guarantor to any future amendments to the Credit Agreement or the Guaranty.

Each Lender party hereto hereby directs and authorizes the Administrative Agent to execute and deliver, and perform its obligations under, this Amendment.

## SECTION VI.    MISCELLANEOUS

**A.    <u>Reference to and Effect on the Credit Agreement, the Guaranty and the Other Credit Documents</u>**.

(i)    On and after the Second Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Credit Agreement, and each reference in the other Credit Documents to the "Credit Agreement", "thereunder", "thereof" or words of like import referring to the Credit Agreement shall mean and be a reference to the Credit Agreement as amended by this Amendment.

(ii)    On and after the Second Amendment Effective Date, each reference in the Guaranty to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Guaranty, and each reference in the other Credit Documents to the "AKM Guaranty", "thereunder", "thereof" or words of like import referring to the Guaranty shall mean and be a reference to the Guaranty as amended by this Amendment.

(iii)    Except as specifically amended by this Amendment, the Credit Agreement, the Guaranty and the other Credit Documents shall remain in full force and effect and are hereby ratified and confirmed.

(iv)    The execution, delivery and performance of this Amendment shall not constitute a waiver of any provision of, or operate as a waiver of any right, power or remedy of any Agent or Lender under, the Credit Agreement, the Guaranty or any of the other Credit Documents.

(v)    This Amendment shall constitute a Credit Document.

**B.    <u>Headings</u>.**  Section and Subsection headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose or be given any substantive effect.

**C.    <u>Applicable Law</u>.  THIS AMENDMENT AND THE RIGHTS AND OB-LIGATIONS OF THE PARTIES HEREUNDER (INCLUDING, WITHOUT LIMITATION, ANY CLAIMS SOUNDING IN CONTRACT LAW OR TORT LAW ARISING OUT OF THE SUBJECT MATTER HEREOF AND ANY DETERMINATIONS WITH RESPECT TO POST-JUDGMENT INTEREST) SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE**

7

INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES THEREOF THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

    **D.**   **<u>Counterparts</u>.**  This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

*[Remainder of this page intentionally left blank.]*

8

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**BORROWER:**

**AMERICAN ENERGY PARTNERS**
        **HOLDCO, LLC**

By: _____

Name: Aubrey K. McClendon

Title: CEO

**GUARANTORS :**

**AMERICAN ENERGY PARTNERS, LP**

By: _____
Name: Aubrey K. McClendon
Title: CEO

**AELP FINANCE HOLDINGS, LLC**

By: _____
Name: Aubrey K. McClendon
Title: CEO

**AMERICAN ENERGY MANAGEMENT SERVICES, LLC**

By: _____
Name: Aubrey K. McClendon
Title: CEO

**PERSONAL GUARANTOR :**

By: _____

Name: Aubrey K. McClendon

**WILMINGTON TRUST, NATIONAL
ASSOCIATION**, as Administrative Agent

By:

Name:

Title:

Joshua G. James
Vice President

**GOLDMAN SACHS LENDING PARTNERS**
LLC, as a Lender

By: _Jamie Minieri_____

     Name:     **Jamie Minieri**
     Title:     **Authorized Signatory**

**CREDIT SUISSE AG, CAYMAN ISLANDS
BRANCH,**
as a Lender

By: _____
Name:
Title:    CHRISTOPHER DAY
          AUTHORIZED SIGNATORY


By: _____
Name:
Title:    Karim Rahimtoola
          Authorized Signatory

**MORGAN STANLEY SENIOR FUNDING, INC.,**
as a Lender

By: _____
Name: Dmitriy Barskiy
Title: Vice President

**BLUE RIDGE INVESTMENTS, L.L.C.,**
as a Lender

**John Hiebendahl**
**Blue Ridge Investments, L.L.C.**
**SVP; Controller**

By: _____
Name: John Hiebendahl
Title: SVP; Controller

CH\2069263.7

**KEYBANK NATIONAL ASSOCIATION,**
as a Lender

By: _____

Name: John Dravenstott
Title:   Vice President

**SUNTRUST BANK,**
as a Lender

By:

Name: Chulley Bogle
Title: Vice President

**MUFG UNION BANK N.A.,**
as a Lender

By: _____

      Name: Rachel Bowman
      Title: Vice President

**JEFFERIES GROUP LLC,**
as a Lender

By: _____

Name:  Mark Sahler

Title:  Managing Director

### THIRD AMENDMENT
### TO CREDIT AND GUARANTY AGREEMENT

### AND SECOND AMENDMENT TO GUARANTY

**THIS THIRD AMENDMENT TO CREDIT AND GUARANTY AGREEMENT AND SECOND AMENDMENT TO GUARANTY** (this **"Amendment"**) is dated as of February 9, 2016 and is entered into by and among **AMERICAN ENERGY PARTNERS HOLDCO, LLC**, a Delaware limited liability company (**"Borrower"**), **AMERICAN ENERGY PARTNERS, LP**, an Oklahoma limited partnership (**"Holdings"**), **WILMINGTON TRUST, NATIONAL ASSOCIATION**, as Administrative Agent (**"Administrative Agent"**), the Lenders, Aubrey K. McClendon, a natural person (**"Personal Guarantor"**), and, for purposes of Section V hereof, the **GUARANTORS** listed on the signature pages hereto, and is made with reference to (i) that certain **CREDIT AND GUARANTY AGREEMENT** dated as of November 6, 2014 (as amended through the date hereof, the **"Credit Agreement"**) by and among the Borrower, Holdings, the subsidiaries of the Borrower named therein, the Lenders, the Administrative Agent, Collateral Agent and the other Agents named therein, and (ii) that certain **GUARANTY** dated as of November 6, 2014 (as amended through the date hereof, the **"Guaranty"**) by and between the Personal Guarantor and the Administrative Agent. Capitalized terms used herein without definition shall have the same meanings herein as set forth in the Credit Agreement after giving effect to this Amendment.

### RECITALS

**WHEREAS,** the Credit Parties have requested that the Lenders agree to amend certain provisions of the Credit Agreement as provided for herein; and

**WHEREAS,** subject to certain conditions, the Lenders party hereto are willing to agree to such amendment relating to the Credit Agreement and a related amendment to the Guaranty.

**NOW, THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

### SECTION I.    AMENDMENTS TO CREDIT AGREEMENT

**1.1    <u>Amendments to Section 1.1.</u>**

Section 1.1 of the Credit Agreement is hereby amended by adding the following definitions in appropriate alphabetical order:

"**Interest Reserve Account Reserve Requirements**" means (i) to the extent interest is paid on the Interest Payment Date occurring on February 8, 2016 with funds on deposit in the Interest Reserve Account and less than $9,000,000 remains on deposit in the Interest Reserve Account following such interest payment, Borrower shall cause any necessary deposits to be made no later than March 31, 2016 such that no less than $9,000,000 is on deposit in the Interest Reserve Account on such date, which amount shall be maintained on deposit in the Interest Reserve Account at all times until the Interest Payment Date

occurring on May 9, 2016; and (ii) to the extent interest is paid on the Interest Payment Date occurring on May 9, 2016 with funds on deposit in the Interest Reserve Account and less than $9,000,000 remains on deposit in the Interest Reserve Account following such interest payment, Borrower shall cause any necessary deposits to be made no later than June 30, 2016 such that no less than $9,000,000 is on deposit in the Interest Reserve Account on such date."

"**Third Amendment**" means that certain Third Amendment to Credit and Guaranty Agreement and Second Amendment to Guaranty, dated as of the Third Amendment Date, by and among the Administrative Agent, the Credit Parties and the Lenders signatory thereto.

"**Third Amendment Date**" means February 9, 2016.

**1.2**    **Amendment to Section 5.2(b).**

Section 5.2(b) is hereby amended and restated in its entirety as follows:

"Deposit no less than $20,000,000 of Cash proceeds of the Loans into the Interest Reserve Account on the Closing Date and, together with the Interest Reserve Account Reserve Requirements, maintain at least $9,000,000 on deposit in the Interest Reserve Account at all times on or after June 30, 2016.  The Borrower shall execute and deliver to Administrative Agent (x) within 30 days following the Closing Date the Blocked Account Agreement and (y) within ten (10) Business Days following the Third Amendment Date, an amendment to the Blocked Account Agreement (or a replacement Blocked Account Agreement) providing the Administrative Agent with sole dominion over the Interest Reserve Account and otherwise in form and substance reasonably satisfactory to the Administrative Agent.  Without limiting Borrower's obligations under Section 2.8, on each Interest Payment Date, unless the Borrower otherwise pays such interest, the Administrative Agent shall withdraw funds from the Interest Reserve Account to pay accrued interest due and payable under this Agreement on such date and, subject to the Interest Reserve Account Reserve Requirements, the Borrower shall cause any necessary deposits to be made such that after giving effect to such withdrawal no less than $9,000,000 is on deposit in the Interest Reserve Account."

**1.3**    **Amendment to Section 5.**

Section 5 is hereby amended by adding the following Section 5.21 to the end of such Section:

"**5.21 Lender Meeting**. (i) No later than March 15, 2016, hold an in-person meeting of the officers and managers of the Borrower and the other Credit Parties, AKM, the Administrative Agent and the Lenders at a time and location reasonably acceptable to the Requisite Lenders to discuss the transactions contemplated by the JV Term Sheet (as defined in the Third Amendment) and the Credit Parties' ability to pay the Obligations as they become due and payable in accordance with the terms of the Credit Documents (including, in connection therewith, any extension of the Maturity Date), and (ii) no later

2

than the date that is ten (10) days prior to such meeting, (A) to the extent the same are in the possession of (or otherwise available to) the Credit Parties or can be prepared by the Credit Parties based on information in possession of (or otherwise available to) the Credit Parties, provide to the Administrative Agent and the Lenders the materials set forth on Schedule 5.21 hereto and (B) use reasonable best efforts to obtain from the Investment Vehicles, and subsequently provide to the Lenders, all information and other materials set forth on Schedule 5.21 not otherwise provided by the Credit Parties pursuant to clause (ii)(A) of this Section 5.21."

**1.4    Amendment to Section 8.1(b).**

Section 8.1(b) is hereby amended by replacing "5.18 or 5.19" in clause (i) thereof with "5.18, 5.19 or 5.21".

**1.5    Amendment to Schedules to Credit Agreement.**

The Credit Agreement is hereby amended to add Schedule 5.21 of this Amendment as Schedule 5.21 of the Credit Agreement.

**SECTION II.    AMENDMENTS TO GUARANTY**

**2.1    <u>Amendment to Section 5(g).</u>**

Section 5(g) of the Guaranty is hereby amended and restated in its entirety to read as follows:

"(i) Not create, incur, assume or suffer to exist any lien or other encumbrance on the Collateral, except in favor of the Lender pursuant to the Security Documents, (ii) not sell, transfer, assign or otherwise dispose of, or dividend or otherwise distribute, whether directly or indirectly, any of the Equity Interests in a Credit Party, any subsidiary or any Investment Vehicle held, directly or indirectly, by the Guarantor, except the Guarantor may sell, transfer, assign or otherwise dispose of (but not dividend or otherwise distribute), either directly or indirectly, up to 50% of the aggregate Equity Interests the Guarantor holds, directly or indirectly, in any such Investment Vehicle as of the Closing Date (or, in the case of any Future Investment Vehicle, as of the date that the Guarantor's investment in such Future Investment Vehicle is consummated) in exchange for fair market value thereof, so long as the proceeds thereof are used to make a prepayment of the Term Loan to Agent in accordance with Section 2.14 of the Credit Agreement, (iii) except with respect to restrictions by reason of customary provisions restricting assignments, subletting or other transfers contained in leases, licenses and similar agreements entered into in the ordinary course of business (provided that such restrictions are limited to the property or assets subject to such leases, licenses or similar agreements, as the case may be), not enter into any agreement prohibiting the creation or assumption of any Lien upon any of the Collateral, whether now owned or hereafter acquired, to secure the Obligations, and (iv) from and after the Third Amendment Date, not incur any Indebtedness or guarantee any obligations of any Person other than, so long as no Default or Event of Default exists or would result therefrom, (x) any Indebtedness to the extent

3

all of the proceeds thereof are applied on the date of receipt thereof to  prepay the Term Loans on a pro rata basis (in accordance with the respective outstanding principal amounts thereof) in an amount equal to the lesser of (A) the aggregate amount of such proceeds and (B) the then outstanding principal balance of the Term Loans, (y) guarantees of Indebtedness of other Persons that refinance existing Indebtedness of such Persons in an aggregate amount at any time not to exceed the sum of (A) the outstanding principal amount of such existing Indebtedness on the Third Amendment Date as described on Schedule 5(g) to this Guaranty plus (B) $10,000,000, and (z) other Indebtedness and guarantees of obligations of other Persons not to exceed $15,000,000 in the aggregate at any time (the "**New Indebtedness Cap**"), in each case, to the extent (I) incurred in the ordinary course of business of the Guarantor, (II) such guaranteed obligation or other Indebtedness does not have a maturity date occurring earlier than the third anniversary of the Third Amendment Date and (III) in the case of clauses (y) and (z) above, the amount on deposit in the Interest Reserve Account is not less than $9,000,000 at the time of such incurrence or guarantee; provided, however, that, other than in connection with any refinancing of such obligations, the New Indebtedness Cap will be increased by an amount equal to 50% of the aggregate amount by which the aggregate obligations of other Persons set forth on Schedule 5(g) to this Guaranty are reduced or are no longer guaranteed by the Guarantor following the Third Amendment Date (it being understood that any such reduction or failure to be guaranteed is evidenced by documentation reasonably satisfactory to the Agent)."

**2.2**     **Amendment to Schedules to Guaranty.**

The Guaranty is hereby amended to add Schedule 5(g) of this Amendment as Schedule 5(g) of the Guaranty.

## SECTION III.     CONDITIONS TO EFFECTIVENESS

This Amendment shall become effective as of February 9, 2016 only upon the satisfaction of all of the following conditions precedent (the date of satisfaction of such conditions being referred to herein as the "**Third Amendment Effective Date**"):

**A.     Execution**. Administrative Agent shall have received (i) a counterpart signature page of this Amendment duly executed by each of the Borrower and the Guarantors and (ii) counterpart signature pages of this Amendment duly executed by the Requisite Lenders.

**B.     Fees**. The Administrative Agent shall have received all fees and other amounts due and payable on or prior to the Third Amendment Effective Date, including, to the extent invoiced, reimbursement or other payment of all out-of-pocket expenses required to be reimbursed or paid by the Borrower hereunder or any other Credit Document.

**C.     Necessary Consents.** Each Credit Party shall have obtained all material consents necessary or advisable in connection with the transactions contemplated by this Amendment.

**D.    Other Documents.**  Administrative Agent and Lenders shall have received such other documents, information or agreements regarding Credit Parties as Administrative Agent or Collateral Agent may reasonably request.

## SECTION IV.    REPRESENTATIONS AND WARRANTIES

In order to induce Lenders to enter into this Amendment and to amend the Credit Agreement in the manner provided herein, each Credit Party that is a party hereto represents and warrants to each Lender that the following statements are true and correct in all material respects:

**A.    Corporate Power and Authority.**  Each Credit Party (other than the Personal Guarantor), which is party hereto, has all requisite power and authority to enter into this Amendment and to carry out the transactions contemplated by, and perform its obligations under, the Credit Agreement as amended by this Amendment (the **"Amended Agreement"**).

**B.    Authorization of Agreements.**  The execution and delivery of this Amendment and the performance of the Amended Agreement have been duly authorized by all necessary action on the part of each Credit Party (other than the Personal Guarantor).

**C.    No Conflict.**  The execution and delivery by each Credit Party of this Amendment and the performance by each Credit Party of the Amended Agreement and the Guaranty as amended by this Amendment (the **"Amended Guaranty"**)  do not and will not (i) violate (A) any provision of any law, statute, rule or regulation, or of the certificate or articles of incorporation or partnership agreement, other constitutive documents or by-laws of Holdings, the Borrower or any Credit Party or (B) any applicable order of any court or any rule, regulation or order of any Governmental Authority, (ii) be in conflict with, result in a breach of or constitute (alone or with notice or lapse of time or both) a default under any contractual obligation of the applicable Credit Party, where any such conflict, violation, breach or default referred to in clause (i) or (ii) of this Section IV.C., individually or in the aggregate could reasonably be expected to have a Material Adverse Effect, (iii) result in or require the creation or imposition of any Lien upon any of the properties or assets of each Credit Party (other than any Liens created under any of the Credit Documents in favor of Administrative Agent on behalf of Lenders), or (iv) require any approval of stockholders or partners or any approval or consent of any Person under any Contractual Obligation of each Credit Party, except for such approvals or consents which will be obtained on or before the Third Amendment Effective Date and except for any such approvals or consents the failure of which to obtain will not have a Material Adverse Effect.

**D.    Governmental Consents.**  No action, consent or approval of, registration or filing with or any other action by any Governmental Authority is or will be required in connection with the execution and delivery by each Credit Party of this Amendment, the performance by the Credit Parties (other than the Personal Guarantor) of the Amended Agreement and the performance by the Personal Guarantor of the Amended Guaranty, except for such actions, consents and approvals the failure to obtain or make which could not reasonably be expected to result in a Material Adverse Effect or which have been obtained and are in full force and effect.

**E.    Binding Obligation.**  This Amendment has been duly executed and delivered by each of the Credit Parties party hereto and constitutes a legal, valid and binding obligation of such Credit Party to the extent a party hereto, enforceable against such Credit Party in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, moratorium, reorganization or other similar laws affecting creditors' rights generally and except as enforceability may be limited by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

**F.    Absence of Default.**  Other than the late payment of interest with respect to the Interest Payment Date occurring on February 8, 2016 to which this Amendment relates, which Default will be cured by the payment of such interest by the Borrower immediately after giving effect to this Amendment,  no event has occurred and is continuing or will result from the consummation of the transactions contemplated by this Amendment that would constitute an Event of Default or a Default.

**G.    Competence of Personal Guarantor.**  The Personal Guarantor is at least twenty-one (21) years of age and is competent to enter into this amendment and to perform the Personal Guarantor's obligations hereunder and under the Amended Guaranty.

**H.    Preferred Equity Investment.**  The Borrower and the Personal Guarantor executed a non-binding term sheet with a Person that is not an Affiliate of any of the Credit Parties on January 30, 2016, the terms of which are summarized in the "Summary Description of Proposed Joint Venture" set forth as Exhibit A attached hereto (the "JV Term Sheet").

**I.    Incorporation of Representations and Warranties from Credit Agreement.** Each of the representations and warranties contained in Section 4 of the Credit Agreement and in Section 4 of the Amended Guaranty is and will be true and correct in all respects on and as of the Third Amendment Effective Date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case they were true and correct in all respects on and as of such earlier date.

## SECTION V.    ACKNOWLEDGMENT AND CONSENT

Each AELP Guarantor hereby acknowledges that it has reviewed the terms and provisions of the Credit Agreement and this Amendment and consents to the amendment of the Credit Agreement effected pursuant to this Amendment.  The Personal Guarantor hereby acknowledges that it has reviewed the terms and provisions of the Guaranty and this Amendment and consents to the amendment of the Guaranty effected pursuant to this Amendment.  Each Guarantor hereby confirms that each Credit Document to which it is a party or otherwise bound and all Collateral encumbered thereby will continue to guarantee or secure, as the case may be, to the fullest extent possible in accordance with the Credit Documents the payment and performance of all "Obligations" under each of the Credit Documents to which is a party (in each case as such terms are defined in the applicable Credit Document).

Each Guarantor acknowledges and agrees that any of the Credit Documents to which it is a party or otherwise bound shall continue in full force and effect and that all of its obligations

thereunder shall be valid and enforceable and shall not be impaired or limited by the execution or effectiveness of this Amendment.

Each Guarantor acknowledges and agrees that (i) notwithstanding the conditions to effectiveness set forth in this Amendment, such Guarantor is not required by the terms of the Credit Agreement, the Guaranty or any other Credit Document to consent to the amendments to the Credit Agreement and the Guaranty effected pursuant to this Amendment and (ii) nothing in the Credit Agreement, the Guaranty, this Amendment or any other Credit Document shall be deemed to require the consent of such Guarantor to any future amendments to the Credit Agreement or the Guaranty.

Each Lender party hereto hereby directs and authorizes the Administrative Agent to execute and deliver, and perform its obligations under, this Amendment.

## SECTION VI.    MISCELLANEOUS

**A.    <u>Reference to and Effect on the Credit Agreement, the Guaranty and the Other Credit Documents</u>**.

(i)    On and after the Third Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Credit Agreement, and each reference in the other Credit Documents to the "Credit Agreement", "thereunder", "thereof" or words of like import referring to the Credit Agreement shall mean and be a reference to the Credit Agreement as amended by this Amendment.

(ii)    On and after the Third Amendment Effective Date, each reference in the Guaranty to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Guaranty, and each reference in the other Credit Documents to the "AKM Guaranty", "thereunder", "thereof" or words of like import referring to the Guaranty shall mean and be a reference to the Guaranty as amended by this Amendment.

(iii)    Except as specifically amended by this Amendment, the Credit Agreement, the Guaranty and the other Credit Documents shall remain in full force and effect and are hereby ratified and confirmed.

(iv)    The execution, delivery and performance of this Amendment shall not constitute a waiver of any provision of, or operate as a waiver of any right, power or remedy of any Agent or Lender under, the Credit Agreement, the Guaranty or any of the other Credit Documents.

(v)    This Amendment shall constitute a Credit Document.

**B.    <u>Headings</u>.**  Section and Subsection headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose or be given any substantive effect.

7

**C.     Applicable Law.   THIS AMENDMENT AND THE RIGHTS AND OB-LIGATIONS OF THE PARTIES HEREUNDER (INCLUDING, WITHOUT LIMITATION, ANY CLAIMS SOUNDING IN CONTRACT LAW OR TORT LAW ARISING OUT OF THE SUBJECT MATTER HEREOF AND ANY DETERMINATIONS WITH RESPECT TO POST-JUDGMENT INTEREST) SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES THEREOF THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.**

**D.     Counterparts.**   This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.

**E.     Ratification of Liability.**   Each of the Borrower and the other Credit Parties, as debtors, grantors, pledgors, guarantors, assignors, or in other similar capacities in which such parties grant liens or security interests in their properties or otherwise act as accommodation parties or guarantors, as the case may be, under the Credit Documents, hereby ratifies and reaffirms all of its payment and performance obligations and obligations to indemnify, contingent or otherwise, under each of such Credit Documents to which such party is a party, and each such party hereby ratifies and reaffirms its grant of liens on or security interests in its properties pursuant to such Credit Documents to which it is a party as security for the Obligations under or with respect to the Credit Agreement, and confirms and agrees that such liens and security interests hereafter secure all of the Obligations to the extent provided in the Credit Documents, including, without limitation, all additional Obligations hereafter arising or incurred pursuant to or in connection with this Amendment, the Credit Agreement or any other Credit Document, in each case on the terms set forth in the Credit Documents.

*[Remainder of this page intentionally left blank.]*

8

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**BORROWER:**

**AMERICAN ENERGY PARTNERS HOLDCO, LLC**

By: _____

Name: Aubrey K. McClendon
Title: Chief Executive Officer

[Third Amendment to Credit and Guaranty Agreement and Second Amendment to Guaranty]

**GUARANTORS :**

**AMERICAN ENERGY PARTNERS, LP**

By: _____
     Name: Aubrey K. McClendon
     Title: Chief Executive Officer

**AELP FINANCE HOLDINGS, LLC**

By: _____
     Name: Aubrey K. McClendon
     Title: Chief Executive Officer

**AMERICAN ENERGY MANAGEMENT SERVICES, LLC**

By: _____
     Name: Aubrey K. McClendon
     Title: Chief Executive Officer

**ARCADIA CAPITAL AEPB, LLC**

By: _____
     Name: Aubrey K. McClendon
     Title:   Chief Executive Officer

[Third Amendment to Credit and Guaranty Agreement and Second Amendment to Guaranty]

**PERSONAL GUARANTOR :**

By: _____
Aubrey K. McClendon

**WILMINGTON TRUST, NATIONAL ASSOCIATION**, as Administrative Agent

By: _____

Name:  Meghan H. McCauley
Title:   Assistant Vice President

**GOLDMAN SACHS LENDING PARTNERS
LLC,** as a Lender

By:

Name:  Michelle Latzoni
Title:  Authorized Signatory

[Third Amendment to Credit and Guaranty Agreement and Second Amendment to Guaranty]

**CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,**
as a Lender

By: _____
Name:   Michael A. Criscito
Title:    Authorized Signatory

By: _____
Name:
Title:    Laura Katherine Schembri
          Authorized Signatory

[Third Amendment to Credit and Guaranty Agreement and Second Amendment to Guaranty]

**MORGAN STANLEY SENIOR FUNDING, INC.,**
as a Lender

By: _____

Name: Dmitriy Barskiy
Title: Vice President

[Third Amendment to Credit and Guaranty Agreement and Second Amendment to Guaranty]

**BLUE RIDGE INVESTMENTS, LLC,**
as a Lender

By: _____
Name: Thomas Biaggi
Title: Managing Director

**SUNTRUST BANK,**
as a Lender

By:

Name:
Title:

SunTrust Bank
JANET R. NAIFEH
Senior Vice President

[Third Amendment to Credit and Guaranty Agreement and Second Amendment to Guaranty]